[No. B190950. Second Dist., Div. Three. May 10, 2007.]

MICHAEL FAUST, Plaintiff and Appellant, v.
CALIFORNIA PORTLAND CEMENT COMPANY, Defendant and
Respondent.

## COUNSEL

Horton & Lines, Horton & DeBolt and Laura L. Horton for Plaintiff and Appellant.

Jackson Lewis, Robert D. Vogel and Joanie L. McGuire for Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Plaintiff and appellant Michael Faust (Faust) appeals a judgment following a grant of summary judgment in favor of his former employer, defendant and respondent California Portland Cement Company, a California corporation (Portland).

The gravamen of this action is Faust's claim he was terminated in violation of his right to medical leave under California's Moore-Brown-Roberti Family Rights Act (CFRA) (Gov. Code, § 12945.2),[1] a part of the California Fair Employment and Housing Act (FEHA) (§ 12900 et seq.).

From the extensive papers on summary judgment, we glean a few key facts. First, there is nothing in the separate statements of undisputed facts to indicate Portland posted notice or gave notice to Faust of his leave rights under the CFRA. (Cal. Code Regs., tit. 2, § 7297.9.)[2] The separate statements establish that Portland's human resources manager admitted she *never* informed Faust of any right he may have had to leave under the CFRA. The separate statements further establish (1) the employer admitted that Faust "provided verbal notice sufficient to make [the employer] aware that he needed leave pursuant to CFRA"; and (2) the employer admitted the work status report of Dr. Andalib, Faust's chiropractor, "contains the stated reason for CFRA leave."

■ Thus, the state of the record is that Faust provided sufficient information to the employer to advise it of his need for leave pursuant to the CFRA, and that the employer did not give notice to Faust of his right to leave under

[1] All further statutory references are to the Government Code, unless otherwise indicated.

[2] California Code of Regulations, title 2, section 7297.9 provides in relevant part at subdivision (a): "Covered employers shall provide notice to their employees of the right to request CFRA leave under the California Family Rights Act."

the CFRA. As explained, from these facts flow certain legal consequences. Therefore, the judgment in most respects is reversed and the matter is remanded for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### 1. *Facts.*

Faust began working at Portland in 1977. At the relevant time herein, in 2003, Faust worked at Portland's Mojave plant as a union-represented lube specialist in a garage supervised by Hank Schrader (Schrader).

On Friday, February 21, 2003, plant manager Bruce Shafer (Shafer) received an e-mail from Faust stating that various unnamed employees at the garage had engaged in internal theft and misconduct. Shafer showed the e-mail to the plant's human resources manager, Crystal Andersen (Andersen).

On February 26, 2003, Shafer met with Schrader and Schrader's supervisor to discuss the allegations. Later that day, Schrader went back to the garage and told the employees about Faust's e-mail.

The following day, February 27, 2003, was Faust's last active day of employment with the company. That morning, Faust arrived for his regularly scheduled shift. Bill Buchanan, a fellow employee who was supposed to drive Faust to the worksite, did not pick up Faust, requiring Faust to walk to the site. At lunch, Faust saw Buchanan and asked him why he had failed to pick him up. Buchanan responded that Schrader had returned from a meeting with Shafer and told the workers that Faust had sent an e-mail accusing them of theft and that everyone should "watch their backs."

Faust was disturbed the contents of the e-mail had been divulged to his coworkers and began to experience shortness of breath, confusion, panic attacks and feelings of despair. Faust needed assistance with a particular piece of equipment and radioed the garage. The garage did not respond to his call. Faust returned to the garage and when he walked in, he was given the "cold

---

[3] On appeal from the grant of summary judgment, we view the evidence in the light most favorable to Faust, as the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*); *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139 [127 Cal.Rptr.2d 145] (*Alexander*).)

shoulder." Realizing the situation had escalated and fearing for his safety, Faust took a time-off slip and filled it out. Schrader was angry, denied the request for time off, and told Faust he was not going to get any time off until he was satisfied Faust had his job duties under control.

Faust returned to his truck and went up into the quarry. Without radio connections to the garage, Faust was in a dangerous situation, driving a large fuel truck into remote areas of the quarry, and his coworkers would not respond to his requests for assistance. Faust began to experience extreme anxiety and other symptoms. He called a supervisor, Ron Bergloff, and told him what had happened. They agreed that Faust would leave the premises and Bergloff escorted him to the front office. Faust never returned to work after that day.

Five days later, on March 4, 2003, Faust began a 30-day psychiatric program at Kaiser Permanente. On March 8, 2003, Faust filed a workers' compensation claim and his attorney advised Portland of the claim.

By March 17, 2003, Faust was experiencing severe lower back pain. The pain was so severe that Faust was walking like a "question mark."

Faust provided Portland with documentation of medical impairment from Kaiser from March 4, 2003, through April 3, 2003, documenting a diagnosis or reason for impairment as "anxiety/stress/phobic disorders, depressive, Bipolar/Mood disorders." The psychiatric benefits through Kaiser end after 30 days, irrespective of the status of treatment, and therefore, the Kaiser certification ended April 3, 2003. However, Faust was told by his psychiatrist at Kaiser to stay away from stressful situations. Faust was still experiencing severe back pain and was undergoing chiropractic treatment.

On March 31, 2003, Faust received a medical certification form from his chiropractor, Dr. Andalib, and delivered it to Portland the next day. The note recommended physiotherapy, chiropractic therapy and rest, and stated "[t]he patient is unable to perform regular job duties from 3-31-03 to 5-1-03."

On April 1, 2003, Andersen, Portland's human resources manager, left a message on Faust's home answering machine stating she had some problems with the chiropractic certificate that he had dropped off earlier that day and wanted to speak to him about it right away. That same day or the next day, Mrs. Faust returned Andersen's call and left a voice message stating

Andersen could speak with Mrs. Faust, the chiropractor or the workers' compensation attorney. Mrs. Faust left a second message for Andersen on April 4 or 5, 2003, reiterating that Andersen could speak to her, the chiropractor or the workers' compensation attorney, and that Faust was "too stressed out" to speak with Andersen.

Andersen did not contact any of the three individuals designated by Faust.

On April 7, 2003, Andersen again called Faust's home and left a message stating she needed to speak with him directly regarding his employment and the chiropractic certificate.

On April 8, 2003, Andersen sent Faust a letter which stated in pertinent part: "However, the slip you dropped off last Tuesday, was from a Chiropractor (not a Physician/Medical Doctor). It also did not place you off work. The section entitled 'Authorization for Absence' was left blank. However, the area that was completed, entitled 'Work Status Report' stated that you were 'unable to perform regular job duties from 3/31/03 to 5/1/03,' but listed no restrictions. Thus, the paperwork was incomplete and we have been unable to determine what modified duties you may be able to perform. [¶] Because you did not return to work on 4/3/03, as your Kaiser medical documentation released you to do, I believe that you may have intended (though in error) to continue your absence through the Chiropractic slip you dropped off last week. The paperwork is inappropriate (not a physician's slip) as well as it is incomplete (returning you to some form of modified work, instead of requesting an absence)."

Faust was advised by his workers' compensation attorney that if Portland had a problem with his work status report, it was required to contact either his workers' compensation attorney or his doctor, and counsel directed him not to respond to the April 8, 2003 letter.

Andersen never informed Faust of the availability of medical leave under the CFRA or its federal counterpart, the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.) (FMLA), and he did not know he could avail himself of those protections. He believed Andersen would contact his workers' compensation attorney in response to Mrs. Faust's voicemail message, based on his prior dealings with Portland. The previous human resources person at Portland routinely contacted employees' doctors for clarification.

On April 15, 2003, Andersen sent a final letter to Faust stating his employment had been terminated. The letter stated "the paperwork you submitted on 4/1/0[3] was insufficient to sustain an approved absence from work." Thus, Faust was terminated less than seven weeks after his last day on the job.

### 2. Proceedings.

#### a. Pleadings.

After filing a charge with the Department of Fair Employment and Housing and receiving a right-to-sue letter, Faust filed suit against Portland on September 17, 2004. The complaint alleged causes of action for disability discrimination in violation of the FEHA (§ 12900 et seq.); harassment based on disability; retaliation; wrongful termination in violation of public policy; violation of the CFRA; discrimination because of exercise of CFRA rights; and unfair competition (Bus. & Prof. Code, § 17200 et seq.).

#### b. Motion for summary judgment.

On August 12, 2005, Portland filed a motion for summary judgment or in the alternative, for summary adjudication of issues.

With respect to the first cause of action, disability discrimination, Portland asserted, inter alia, at the time of Faust's termination on April 15, 2003, he did not have a disability within the meaning of the FEHA, it did not know whether Faust had an alleged disability, it did not perceive him as a qualified individual with a disability, and Faust was not discharged because of an alleged disability. Further, it had a legitimate, nondiscriminatory business reason for terminating Faust and Faust could not establish that Portland's reasons were false and pretextual.

On the second cause of action, disability harassment, Portland contended Faust was not subject to harassment because of a disability and any such harassment was not sufficiently severe or pervasive as to alter the conditions of employment.

On the third and fourth causes of action, namely, retaliation and wrongful termination in violation of public policy, Portland asserted the claims were meritless because Faust did not engage in a protected activity and there was no causal connection between any protected activity and the termination.

On the fifth and sixth causes of action, involving the CFRA, Portland contended the claims were meritless because Faust's chiropractor was not a certified health care provider, Faust did not give Portland proper notice of a CFRA-qualifying leave prior to his termination, and Faust was properly terminated for refusing to cooperate with Portland's legitimate good faith requests for additional medical information necessary to evaluate his fitness for work.

Finally, the seventh cause of action, unfair competition, was infirm because the underlying claims were meritless and Faust could not establish the existence of sufficient acts or practices within the meaning of Business and Professions Code section 17200.

### c. *Opposition papers.*

In opposition, Faust argued: a triable issue of fact exists as to whether Portland interfered with his rights under the CFRA; Portland failed to inform Faust of his eligibility for CFRA leave, and did not inquire into specific facts or even determine whether CFRA leave was appropriate; a triable issue exists as to whether Dr. Andalib was a health care provider within the meaning of the CFRA; Faust provided sufficient information to put Portland on notice of his need for CFRA leave; if Portland doubted the veracity of Dr. Andalib's report, its remedy was to request a second opinion by its own doctor and having failed to do so, it waived its right to challenge Dr. Andalib's findings; Portland failed to contact Dr. Andalib to clarify any concerns that it had; and Faust duly designated his wife, his workers' compensation attorney or Dr. Andalib to communicate with Portland.

In addition, Faust contended he established a prima facie case of disability discrimination under the FEHA; a triable issue of fact exists as to whether his discharge was based on discrimination and he met his burden to show the reason given by Portland, i.e., insubordination, was pretextual; and triable issues exist as to whether he was harassed, as to the retaliation cause of action, and as to whether he was terminated in violation of public policy.

Finally, Faust contended a claim under Business and Professions Code section 17200 is proper upon proof of any of the underlying statutory discrimination or retaliation claims.

### d. *Trial court's ruling.*

On January 9, 2006, the matter came on for hearing. The trial court granted summary judgment in favor of Portland, finding in essence that Portland duly terminated Faust for insubordination in taking an unauthorized leave of

absence. The trial court's ruling did not address Faust's contention that Portland failed to advise him of his eligibility for leave under the CFRA or the consequences of that failure by Portland.

The trial court indicated that in ruling on the motion, "the court did not consider any evidence to which an objection was sustained and did not consider any evidence not reflected in Defendant's separate statement." The trial court set forth its decision as follows:

"Plaintiff's first cause of action is for disability discrimination. This cause of action fails as a matter of law because Defendant has presented a legitimate, non-discriminatory reason for terminating Plaintiff: insubordination. He refused to communicate with Defendant regarding his requested medical leave and failed to personally respond to Defendant's requests for information concerning his condition and/or fitness to work. The undisputed facts establish that Plaintiff was granted an initial medical leave and was asked to keep the Defendant updated with appropriate medical documentation so his absences from work could continue to be excused and his medical leaves of absence could continue to be approved. Plaintiff refused to communicate with Defendant despite its repeated requests for information and Plaintiff was informed that he would be terminated if he continued to ignore Defendant's requests for information. Plaintiff refused to communicate with Defendant thereafter and was terminated due to this admitted insubordination.

"On April 8, 2003, [Andersen], Defendant's human resources manager, mailed Plaintiff a letter via certified mail memorializing past voice messages and informing him that she had been trying to make a good faith effort to assist Plaintiff in remaining in compliance with Defendant's policies regarding his request for a second leave of absence. The letter concluded by informing Plaintiff that if he remained insubordinate and refused to cooperate, he would be terminated. Although Plaintiff received the letter on April 9, 2003, he never responded to it and was terminated. As of April 15, 2003, the date of Plaintiff's discharge, Defendant did not know if Plaintiff was still suffering from and/or being treated for depressive mood disorders which gave rise to his first approved medical leave. The only information Defendant had as of April 15, 2003 concerning Plaintiff's mental condition was that he was last seen at Kaiser on March 19, 2003 [which] released him to work . . . without any limitations as of April 3, 2003. These facts are undisputed.

"Once an employer has articulated a legitimate, non-discriminatory business reason for terminating an employee, the burden shifts to the employee to provide substantial, responsive and admissible evidence that the employer's stated reason is a pretext and that the true reason for the termination was illegal discrimination. [Citation.]

"Plaintiff points to no evidence to raise a triable issue Defendant's proffered reason for his termination (insubordination) was a pretext for unlawful disability discrimination. Plaintiff cannot deny that Defendant acted exactly as it had promised him it would act if he ignored the April 8, 2003 letter. Plaintiff does not point to any evidence to suggest that, notwithstanding the April 8th letter requesting information and admonishing him his job was at stake if he did not respond, the real reason he was terminated was because of unlawful disability discrimination and not because he didn't respond to the letter.

"Plaintiff's second cause of action is for disability harassment. Plaintiff has not alleged that anyone harassed him because of any disability. Plaintiff has not alleged, for example, that he was subjected to any type of physical or verbal abuse, epithets, insults, or any other type of conduct constituting unlawful disability harassment. Furthermore, Plaintiff has admitted that he did not experience any panic attacks until his last day of active employment and he didn't tell anybody that day why he was not feeling well. . . .

"Plaintiff's third cause of action is for retaliation in tort and in violation of FEHA. Plaintiff has not alleged that he engaged in any activity protected under Govt. Code § 12940(h)—opposing any practice prohibited by FEHA of filing, participating in or testifying in a FEHA—related proceeding. To the extent it is based upon Plaintiff requesting a medical leave of absence (which is not protected under § 12940), Defendant has established a legitimate, non-retaliatory reason for terminating Plaintiff (his insubordination). To the extent Plaintiff's retaliation claim is based on alleged co-worker retaliation he experienced on the last day he actively worked in February 2003 as a result of his immediate supervisor sharing with fellow employees the contents of an e-mail Plaintiff sent to Bruce Shafer, Defendant has established a legitimate, non-retaliatory reason for terminating Plaintiff (his insubordination) a couple of months later on April 15, 2003.

"Plaintiff's fourth cause of action in tort for wrongful termination in violation of public policy fails because Defendant has established a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Plaintiff's alternative claim for wrongful termination he was retaliated against for complaining about co-employee/supervisor theft in the February 2003 e-mail he sent to Bruce Shafer fails for the same reason as his statutory claim he was terminated in violation of FEHA.

"Plaintiff's fifth and sixth causes of action alleging he was terminated in violation of the California Family Rights Act (CFRA), codified at Govt. Code § 12945.2, fail because Defendant has established a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

"Plaintiff's seventh cause of action for violation of Business and Professions Code § 17200 fails because Plaintiff has not requested any injunctive relief nor has alleged he paid any money to Defendant as a result of any prohibited activity and, therefore, there is no available remedy for his § 17200 claim. [Citation.]

"Accordingly, Defendant's motion for summary judgment is granted . . . ."

This appeal followed.

## CONTENTIONS

Faust contends the trial court erred in applying the *McDonnell Douglas* burden-shifting analysis (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817] (*McDonnell Douglas*)) to the fifth cause of action for violation of the CFRA, it applied the wrong legal standard to the CFRA claim and it overlooked various triable issues of fact pertaining to that claim; he established a prima facie case of disability discrimination under the FEHA; a triable issue exists as to whether his discharge was based on a discriminatory motive and he met his burden to show an inference of retaliation and pretext; and triable issues exist as to the retaliation claim and as to whether he was terminated in violation of public policy.[4]

## DISCUSSION

1. *Standard of appellate review.*

Since this appeal follows "the granting of summary judgment, the evidence must be examined according to summary judgment standards. Examining

---

[4] Faust's appeal does not challenge the trial court's ruling with respect to the unfair competition claim (Bus. & Prof. Code, § 17200).

Also, at oral argument on appeal, Faust properly conceded no triable issue exists as to the cause of action for disability harassment. There was no evidence that Faust was harassed *because of* a disability. Rather, Faust merely presented evidence that harassing conduct arguably caused his mental disability. Obviously, harassment that results in disability is very different from harassment of an employee because of the employee's disability.

evidence in light of summary judgment standards is far different from applying the substantial evidence test that often governs on appeal. In the judgment after trial context the evidence need only be sufficient to support the judgment for the winning party, even though the evidence might, in another reasonable mind, also have supported a judgment for the losing party. In the summary judgment context, by contrast, the evidence must be incapable of supporting a judgment for the losing party in order to validate the summary judgment. Thus even though it may appear that a trial court took a 'reasonable' view of the evidence, a summary judgment cannot properly be affirmed unless a contrary view would be unreasonable as a matter of law in the circumstances presented." (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 838 [89 Cal.Rptr.2d 540].)

The standards applicable to appellate court review of a motion for summary judgment "are well established. (See Code Civ. Proc., § 437c; *Aguilar*[, *supra,*] 25 Cal.4th 826 . . . .) We determine de novo whether a triable issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) [¶] In reviewing a motion for summary judgment, we must consider all of the evidence and all of the inferences reasonably drawn therefrom, and we must view such evidence in the light most favorable to the opposing party. (*Aguilar, supra,* 25 Cal.4th at p. 843.) . . . [¶] A *triable* issue of fact exists when the evidence reasonably permits the trier of fact, under the applicable standard of proof, to find the purportedly contested fact in favor of the party opposing the motion. ([*Id.*] at p. 850.)" (*Alexander, supra,* 104 Cal.App.4th at p. 139.)

This appeal "requires a disciplined analysis of what inferences may be drawn from the admissible evidence. A material issue of fact may not be resolved based on inferences, if contradicted by other inferences or evidence. (Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra,* 25 Cal.4th at p. 856.) '[T]he court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact,' but must determine the question of law of 'what any evidence or inference *could show or imply to a reasonable trier of fact.*' (*Aguilar,* at p. 856.) Where the evidence and inferences would allow a reasonable trier of fact to find the underlying fact in favor of a plaintiff in accordance with the applicable standard of proof, then a defendant's motion for summary judgment must be denied. (*Id.* at p. 850.)" (*Alexander, supra,* 104 Cal.App.4th at p. 139.)

2. *Trial court erred in granting summary judgment in favor of Portland on the CFRA claims; Portland did not show that it complied with an employer's obligations under the CFRA.*

a. *Procedural overview.*

We begin our discussion with the fifth and sixth causes of action, which are the focus of this case. In the fifth cause of action, Faust alleged Portland violated his rights under the CFRA by failing to provide him with medical leave and by terminating his employment. In the sixth cause of action, Faust pled Portland discriminated against him because of his exercise of his rights under the CFRA.

In moving for summary judgment, Portland contended these claims were meritless because (1) Faust's chiropractor was not a certified health care provider, (2) Faust did not give Portland proper notice of a CFRA-qualifying leave prior to his termination, and (3) Faust was properly terminated for refusing to cooperate with Portland's legitimate good faith requests for additional medical information necessary to evaluate his fitness to work.

The trial court found for Portland on these issues, ruling that Faust's CFRA claims "fail[] because Defendant has established a legitimate, non-discriminatory reason for terminating Plaintiff's employment."

b. *Overview of the CFRA.*

■ In 1991, the Legislature enacted the CFRA. (§ 12945.2.) The CFRA, which is contained within the FEHA (§ 12900 et seq.), "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." (*Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 606 [88 Cal.Rptr.2d 239].)

■ Generally, the CFRA makes it an unlawful employment practice for an employer of 50 or more persons to refuse to grant a request by an employee to take up to 12 workweeks in any 12-month period for family care and medical leave. (§ 12945.2, subds. (a), (c)(2)(A).) By prohibiting "employment discrimination based upon family and medical leave, the CFRA strengthens the FEHA's general goal of preventing the deleterious effects of employment discrimination, and also furthers the CFRA's specific goal of promoting stability and economic security in California families." (*Nelson v. United Technologies, supra*, 74 Cal.App.4th at p. 610.)[5]

---

[5] The CFRA "has a federal law counterpart—the [FMLA]. (29 U.S.C. §§ 2601–2654 . . . ; see *Marchisheck v. San Mateo County* (9th Cir. 1999) 199 F.3d 1068, 1073 . . . .) *The [Fair Employment and Housing] Commission has incorporated by reference the federal regulations*

■ An interference claim under the FMLA (and thus the CFRA) does not involve the burden-shifting analysis articulated by the United States Supreme Court in *McDonnell Douglas, supra*, 411 U.S. 792. As stated in *Bachelder v. America West Airlines, Inc.* (9th Cir. 2001) 259 F.3d 1112, 1131 (*Bachelder*), "there is no room for a *McDonnell Douglas* type of pretext analysis when evaluating an 'interference' claim under this statute." A violation of the FMLA "simply requires that the employer deny the employee's entitlement to FMLA leave." (*Xin Liu v. Amway Corp.* (9th Cir. 2003) 347 F.3d 1125, 1135.)

### c. *CFRA procedural requirements.*

■ Employers subject to the CFRA are required to provide notice to their employees of the right to request CFRA leave. (Cal. Code Regs., tit. 2, § 7297.9, subd. (a).) The text of the minimum notice requirements is set forth at California Code of Regulations, title 2, section 7297.9, subdivision (d).[6]

California Code of Regulations, title 2, section 7297.4, subdivision (a)(1), sets forth the notice requirements of a request by an employee for CFRA leave as follows: "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA-qualifying leave, and the anticipated timing and duration of the leave. *The employee need not expressly assert rights under CFRA or FMLA, or even mention CFRA or FMLA, to meet the notice requirement*; however, the employee must state the reason the leave is needed, such as, for example, the expected birth of a child or for medical treatment.[7] The employer should inquire further of the

---

interpreting the FMLA to the extent they are not inconsistent with [CFRA] or other state laws. (Cal. Code Regs., tit. 2, § 7297.10.)" (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 993 [94 Cal.Rptr.2d 643], italics added.)

[6] The text of the notice set forth in California Code of Regulations, title 2, section 7297.9, subdivision (d), states in relevant part: "Under the California Family Rights Act of 1993 (CFRA), if you have more than 12 months of service with us and have worked at least 1,250 hours in the 12-month period before the date you want to begin your leave, you may have a right to an unpaid family care or medical leave (CFRA leave). This leave may be up to 12 workweeks in a 12-month period for the birth, adoption, or foster care placement of your child or for your own serious health condition or that of your child, parent or spouse. [¶] . . . [¶] If possible, you must provide at least 30 days advance notice for foreseeable events (such as the expected birth of a child or a planned medical treatment for yourself or of a family member). For events which are unforeseeable, we need you to notify us, at least verbally, as soon as you learn of the need for the leave. Failure to comply with these notice rules is grounds for, and may result in, deferral of the requested leave until you comply with this notice policy. [¶] *We may require certification from your health care provider* before allowing you a leave for pregnancy or your own serious health condition or certification from the health care provider of your child, parent or spouse who has a serious health condition before allowing you a leave to take care of that family member. When medically necessary, leave may be taken on an intermittent or reduced work schedule." (Italics added.)

[7] For example, in *Mora v. Chem-Tronics, Inc.* (S.D.Cal. 1998) 16 F.Supp.2d 1192, the district court held "as a matter of law, a reasonable jury must find that an employee who told

employee if it is necessary to have more information about whether CFRA leave is being sought by the employee and obtain the necessary details of the leave to be taken." (Italics added.)

With respect to the requirements for requesting leave, section 12945.2 provides in relevant part at subdivision (k): "(1) An employer *may require* that an employee's request for leave because of the employee's own serious health condition be supported by a certification issued by his or her *health care provider*. That certification shall be sufficient if it includes all of the following: [¶] (A) The date on which the serious health condition commenced. [¶] (B) The probable duration of the condition. [¶] (C) A statement that, due to the serious health condition, the employee is unable to perform the function of his or her position. [¶] (2) The employer may require that the employee obtain subsequent recertification regarding the employee's serious health condition on a reasonable basis, in accordance with the procedure provided in paragraph (1), if additional leave is required. [¶] (3)(A) In any case in which the employer has reason to doubt the validity of the certification provided pursuant to this section, the employer may require, at the employer's expense, that the employee obtain the opinion of a second health care provider, designated or approved by the employer, concerning any information certified under paragraph (1)." (Italics added.)[8]

■ The implementing regulations impose an obligation on the employer to inform employees of its notice requirements and set forth the consequences if an employer does not duly advise the employee. California Code of Regulations, title 2, section 7297.4 provides at subdivision (a)(5): *"Employer Obligation to Inform Employees of Notice Requirement. [¶] An employer shall give its employees reasonable advance notice of any notice requirements which it adopts.* The employer may incorporate its notice requirements in the general notice requirements in section 7297.9 and such incorporation shall constitute 'reasonable advance notice.' *Failure of the employer to give or post such notice shall preclude the employer from taking any adverse action against the employee, including denying CFRA leave, for failing to furnish the employer with advance notice of a need to take CFRA leave."* (Italics added.)

---

his employer [by telephone] that his son was HIV positive and had a very high fever and that he 'cannot leave him when he is so ill,' provided sufficient notice that he needed leave because of his son's serious medical condition." (*Id.* at p. 1212.)

[8] The CFRA defines the term " '[h]ealth care provider' " for purposes of certifying a serious medical condition. (§ 12945.2, subd. (c)(6).) Under the CFRA, which incorporates the federal definition of that term, a chiropractor is a health care provider "limited to treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist." (29 C.F.R. § 825.118(b)(1) (2007); see § 12945.2, subd. (c)(6)(B).)

> d. *Portland's failure to establish it complied with an employer's obligations under the CFRA precludes it from obtaining summary judgment with respect to Faust's CFRA claims.*

Portland's burden, as a defendant moving for summary judgment or summary adjudication, was to show that Faust could not establish an element of his cause of action or that there was a complete defense thereto. (Code Civ. Proc., § 437c, subd. (p)(2).) Portland's papers below and on appeal focus on *Faust's* alleged noncompliance with an *employee's* obligations under the CFRA. Portland's basic premise is that Faust was insubordinate in taking an unauthorized leave of absence and in failing to respond to Andersen's inquiries. However, Portland's papers fail to address the threshold issue of an *employer's* obligations under section 12945.2 and the implementing regulations. On that issue, a few salient facts emerge from the voluminous record on summary judgment.

First, there is nothing among the 207 facts in the separate statements of undisputed facts to indicate Portland posted notice or gave notice to Faust of his rights under the CFRA. The separate statements establish that Andersen, Portland's human resource manager, admitted she *never* informed Faust of any right he may have had to leave under the CFRA or FMLA.

The separate statements further establish (1) the employer admitted that Faust "provided verbal notice sufficient to make [the employer] aware that he needed leave pursuant to CFRA"; and (2) the employer admitted the work status report of Dr. Andalib, Faust's chiropractor, "contains the stated reason for CFRA leave."

Thus, the undisputed evidence shows Faust provided sufficient information to the employer to notify it of his need for leave pursuant to the CFRA, and that the employer did not advise Faust of his right to leave under the CFRA. In terms of the chronology, Portland terminated Faust on April 15, 2003, while he was still on leave pursuant to Dr. Andalib's report, and less than seven weeks after his last day on the job. (§ 12945.2, subd. (a) [duration of CFRA leave is up to 12 workweeks during a 12-month period].)

> (1) *Portland's theory that Faust failed to provide it with sufficient notice of a CFRA-qualifying leave and failed to be responsive to Andersen's inquiries.*

Portland contends Faust "*failed to provide sufficient notice to [Portland] of his need for a CFRA qualifying leave* and then unreasonably refused to

respond to [Portland's] questions seeking necessary information that would have assisted [Portland] in determining if Faust was seeking a CFRA-qualifying leave." (Italics added.)

Portland's contention that Faust failed to provide sufficient notice to it of his need for a CFRA-qualifying leave is without merit. In its response to Faust's request for admissions, request No. 24, *Portland admitted that Faust "provided verbal notice sufficient to make [Portland] aware he needed leave pursuant to the California Family Rights Act."* [9] (Italics added.) Therefore, the undisputed evidence establishes that Faust adequately notified Portland of his need for CFRA leave.

The remaining issue in this regard is Portland's contention the record establishes that Faust unreasonably failed to respond to Portland's followup inquiries regarding his condition. That argument is unavailing. On April 1, 2003, Faust submitted a note to Portland from Dr. Andalib stating "[t]he patient is unable to perform regular job duties . . . until 5-1-03." Although Portland contends it duly terminated Faust because he unreasonably failed to respond to Andersen's repeated inquiries concerning his condition, the circumstances of this case also support a contrary inference, namely, that Portland unreasonably failed to communicate with Faust.

The evidence showed Faust's psychiatrist advised him to stay away from stressful situations and he felt "too stressed out" to speak with Andersen. Consequently, Mrs. Faust responded to Andersen on her husband's behalf. Mrs. Faust left two messages for Andersen to advise Andersen that Andersen had permission to speak with her, or Faust's workers' compensation attorney, or Dr. Andalib, if Andersen required additional information. Andersen did not pursue any of those avenues. Irrespective of whether Mrs. Faust could speak for her husband, and even assuming Andersen refrained from contacting Dr. Andalib out of concern for Faust's privacy rights, nothing precluded Andersen, at a minimum, from contacting Faust's attorney.

Further, the evidence showed Faust believed Andersen would contact his workers' compensation attorney in response to Mrs. Faust's voicemail message, based on his prior dealings with Portland. The previous human resources person at Portland routinely contacted employees' doctors for clarification.

---

[9] In its respondent's brief, Portland asserts it conceded only that Faust provided sufficient notice with respect to the earlier approved and expired medical leave for depression. However, in its response to the request for admissions, Portland did not qualify its response in that manner.

Thus, on this record, it cannot be said as a matter of law that Faust "unreasonably refused to respond to [Portland's] questions seeking necessary information that would have assisted [Portland] in determining if Faust was seeking a CFRA-qualifying leave." The record also supports a conflicting inference, namely, that it was Portland which unreasonably refused to communicate with any of Faust's representatives. That issue is for the trier of fact.

In an attempt to explain its insistence that Faust personally respond to Andersen's inquiries, Portland contends Faust could not designate anyone else as his spokesperson because 29 Code of Federal Regulations part 825.303(b) (2007) provides notice of a *request for leave* "may be given by the employee's spokesperson (e.g., spouse, adult family member or other responsible party) *if the employee is unable to do so personally*" (italics added), and here, Faust was not incapable of communicating with his employer concerning the nature of his illness.

However, the issue here is not whether Faust duly *requested leave*—Portland admitted Faust "*provided verbal notice sufficient to make [Portland] aware he needed leave pursuant to the California Family Rights Act.*" (Italics added.) Further, insofar as the lack of a personal response by Faust to Andersen's followup inquiries, the evidence showed that Faust's psychiatrist advised him to stay away from stressful situations and he felt "too stressed out" to speak with Andersen. In other words, Faust presented evidence he was unable personally to respond to Andersen, but that three other individuals were available to respond to Andersen's queries. Therefore, it cannot be said as a matter of law that Faust unreasonably refused to communicate with Andersen.

(2) *Portland's challenge to the adequacy of Dr. Andalib's report.*

Portland further contends the CFRA claims are meritless because Faust was not entitled to CFRA leave for his back condition. Portland's theory is that Dr. Andalib was not a qualified health care provider within the meaning of the CFRA in that she did not take X-rays to establish a subluxation of the spine and thus could not certify a serious health condition within the meaning of the CFRA. (§ 12945.2, subd. (c)(6)(B); 29 C.F.R. § 825.118(b)(1) (2007).)

As a preliminary matter, there is no evidence in the record to show Portland ever advised Faust of the CFRA notice and certification requirements it had adopted. (§ 12945.2, subd. (k)(1) [an employer "may require" that employee's request for leave be supported by certification of health care provider]; Cal. Code Regs., tit. 2, § 7297.4 subd. (a)(5) [an employer "shall give its employees reasonable advance notice of any notice requirements which it adopts"].)[10]

Further, as indicated, Faust provided a note from Dr. Andalib regarding his inability to "perform regular job duties . . . until 5-1-03." Portland "was therefore placed on notice that the leave might be covered" by the CFRA, and it was obligated to inquire further to determine whether the absence was likely to qualify for CFRA protection. (*Bachelder, supra*, 259 F.3d at p. 1131.) The extent of Portland's inquiries, including its insistence on communicating exclusively with Faust, already has been discussed above.

■ Moreover, contrary to Portland's argument, this is not a situation where there was no possibility the absence might be covered by the CFRA.[11] Dr. Andalib testified in deposition that she manipulated Faust's spine and that she detected a subluxation in Faust's back. Instead of seeking a certification from Dr. Andalib of Faust's back condition, Andersen rejected the note from Dr. Andalib out of hand. Andersen incorrectly advised Faust in her April 8, 2003 letter that "[t]he paperwork is inappropriate (*not a physician's slip*) . . . ." (Italics added.) Contrary to the view expressed by Andersen, a physician is not the only health care provider who can certify a serious health condition under the CFRA. As noted in footnote 8, *ante*, for purposes of the CFRA, a chiropractor is a health care provider "limited to treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist." (29 C.F.R. § 825.118(b)(1) (2007); see § 12945.2, subd. (c)(6)(B).) Therefore, Dr. Andalib, as a chiropractor, was not necessarily precluded from certifying a serious health condition.

For these reasons, we reject Portland's contention the CFRA claims must fail on the ground Dr. Andalib did not "certify" Faust had a serious health condition.

---

[10] In *Marchisheck v. San Mateo County, supra*, 199 F.3d 1068, the plaintiff contended the defendant employer failed to post notices of FMLA and CFRA rights in a conspicuous place and therefore, the employer " 'waived its right to dispute' " the question of her son's health. (199 F.3d at pp. 1077–1078.) However, the undisputed evidence established the employer posted the required notices. Therefore, the employer did not waive its right to dispute whether the employee's son had a serious medical condition. (*Id.* at p. 1078.)

[11] "[W]here an employee completely fails to give notice that she is absent for a potentially FMLA-qualifying reason, several circuits have held that the absence is not protected by the Act. [Citations.]" (*Bachelder, supra*, 259 F.3d at p. 1131, fn. 20.)

### e. *Conclusion as to fifth and sixth causes of action.*

For the reasons stated above, the summary judgment ruling was erroneous with respect to the CFRA-based fifth and sixth causes of action.

### 3. *Triable issue as to third cause of action alleging retaliation for exercise of CFRA rights.*

*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 261 [108 Cal.Rptr.2d 739], addresses the elements of a cause of action for retaliation in violation of the CFRA. *Dudley,* which was guided by the federal law counterpart, sets forth the elements as follows: "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave." (Accord, *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 [32 Cal.Rptr.3d 436, 116 P.3d 1123] (*Yanowitz*) [elements of prima facie case of retaliation under FEHA].) Once an employee "establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation. [Citation.]" (*Yanowitz, supra,* at p. 1042.)

Here, Faust made out a prima facie case by presenting evidence that he was entitled to leave under the CFRA, he availed himself of that right, and was terminated for taking the leave to which he was entitled.

The burden then shifted to Portland to present evidence to establish a legitimate, nonretaliatory reason for the discharge. (*Yanowitz, supra,* 36 Cal.4th at p. 1042.) Portland asserts it legitimately discharged Faust for insubordination for failing to respond to Andersen's repeated inquiries. However, Portland's refusal to communicate with any of Faust's representatives, particularly his workers' compensation attorney, undermines Portland's contention that, as a matter of law, it legitimately fired Faust for ignoring Andersen's inquiries.

Accordingly, the grant of summary judgment with respect to the third cause of action for retaliation was erroneous.

### 4. *Triable issue as to fourth cause of action alleging wrongful termination in violation of public policy.*

■ As stated in *Nelson v. United Technologies, supra*, 74 Cal.App.4th at page 609, the public policy embodied in the CFRA satisfies all the requirements identified in *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680] and *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889–890 [66 Cal.Rptr.2d 888, 941 P.2d 1157]. Therefore, an employee may "bring a tortious wrongful discharge claim against an employer subject to the CFRA based upon the policy prohibiting discrimination under the FEHA's CFRA." (*Nelson, supra,* 74 Cal.App.4th at p. 609.)

Because Faust has viable claims for violation of the CFRA, it necessarily follows that a triable issue exists with respect to the fourth cause of action for wrongful termination in violation of public policy.[12]

### 5. *Triable issue as to first cause of action for disability discrimination.*

■ The FEHA makes it an unlawful employment practice to discriminate against any person because of a physical or mental disability. (§ 12940, subd. (a).) A prima facie case for discrimination "on grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability. [Citations.] On a motion for summary judgment brought against such a cause of action the plaintiff bears the burden of establishing a prima facie case of discrimination based upon physical disability, and the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer has done so the plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated. [Citation.]" (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44 [90 Cal.Rptr.2d 15].)

---

[12] *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], held an employee who allegedly was discharged for informing his employer that his supervisor was under investigation for embezzlement did not state a cause of action for wrongful discharge in violation of public policy because the disclosure to the employer served only the private interest of the employer. (*Id.* at pp. 665–671.) Therefore, Faust's theory he was terminated for reporting employee misconduct to his employer does not give rise to a claim for wrongful termination in violation of public policy. Nonetheless, the alleged discharge of Faust in violation of the CFRA is sufficient to make the fourth cause of action for tortious wrongful discharge viable.

With respect to the claim of disability discrimination, Portland moved for summary judgment on the grounds that, at the time of Faust's termination on April 15, 2003, he did not have a disability within the meaning of the FEHA, it did not know whether Faust had an alleged disability, it did not perceive him as a qualified individual with a disability, and Faust was not discharged because of an alleged disability. Further, it had a legitimate, nondiscriminatory business reason for terminating Faust and Faust could not establish that Portland's reasons were false and pretextual. These arguments are unavailing.

Faust presented evidence that Portland was aware of his orthopedic condition at the time it terminated his employment on April 15, 2003. Dr. Andalib's work status report, dated March 31, 2003, advised Portland that Faust was "unable to perform regular job duties . . . ."

As stated in *Schmidt v. Safeway Inc.* (D.Or. 1994) 864 F.Supp. 991, 997, an employer "knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation. The employer need only know the underlying facts, not the legal significance of those facts. Accordingly, whether defendant knew alcohol abuse is considered a 'disability' is of no consequence here. It is sufficient that defendant knew plaintiff had an alcohol problem. [¶] A leave of absence to undergo treatment was an obvious accommodation."

Here, Dr. Andalib specifically recommended a leave of absence through May 1, 2003. Portland rejected Dr. Andalib's recommendation and discharged Faust. Portland's proffered "legitimate, nondiscriminatory reason for the adverse employment action" is that Faust was insubordinate for failing to communicate with Andersen. We have already discussed the so-called failure to communicate and it is unnecessary to reiterate that discussion here.

Portland also contends Faust did not properly designate a spokesperson to communicate with Portland concerning his accommodation request. It is difficult to reconcile this argument with Portland's earlier argument that Faust was not entitled to designate his wife or his attorney as his spokesperson for purposes of his CFRA or FEHA leave request. In any event, Faust presented evidence that Portland did not contact any of the persons designated by Faust and that Portland did not pursue any accommodation of Faust's disability.

Accordingly, the grant of summary judgment was erroneous with respect to the first cause of action for disability discrimination.

## DISPOSITION

The judgment is reversed with respect to the first, third, fourth, fifth and sixth causes of action and the matter is remanded for further proceedings thereon; the judgment is otherwise affirmed. Faust shall recover costs on appeal.

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied May 30, 2007.