Filed 5/27/26  McGill v. Dept. of Corrections and Rehabilitation CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MARJORIE MCGILL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION,<br><br>    Defendant and Respondent. | 2d Civ. No. B340693<br>(Super. Ct. No. 56-2020-00542124-CU-OE-VTA)<br>(Ventura County) |

Marjorie McGill appeals after the trial court granted summary judgment following a motion by respondent State of California Department of Corrections and Rehabilitation (CDCR). Appellant, a nurse at a youth correctional facility, had asserted racial discrimination, age harassment and creation of a hostile work environment, and retaliation claims under the Fair Employment and Housing Act (FEHA).  Appellant contends the

trial court erred in finding her causes of action were without merit. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2010, appellant was hired as a Limited Term Clinic Nurse at CDCR Ventura Youth Correctional Facility. The following year, she was promoted to permanent registered nurse. In January 2015, appellant became an Infection Control Nurse. Management praised her for providing excellent care and service.

In January 2017, appellant was promoted to Limited Term Supervising Registered Nurse II (SRN II) for a one-year appointment. She was reappointed for another one-year term in January 2018. In that role, appellant was responsible for the hiring, training, and supervision of nurses.

Appellant had interpersonal problems with the other SRN II, Deborah Gerhart, as well as Joseph Turner, an administrator. Gerhart and Turner excluded appellant from meetings, and both spoke negatively of appellant to Dr. Ronald Wisdom, her supervisor. Gerhart redirected assignments appellant had delegated. Neither Gerhart nor Turner was appellant's supervisor.

In September 2018, appellant "specifically told [Gerhart] that we don't need to hire any Filipinos." CDCR has policies to prevent discrimination based on race or national origin. Dr. Wisdom informed appellant that statements about not hiring staff based on race or national origin were inappropriate and contrary to CDCR policy.

In October 2018, appellant learned of an emergency call for medical staff attention and was present when the CDCR employee was brought to the clinic for further assessment. Nursing staff determined the employee had low and falling blood

2

pressure, was not sure how much blood pressure medication he had taken that morning, and had a heart attack one year prior. Based on a recent memorandum, appellant determined that, per CDCR policy, the employee would need to receive care outside the facility.

Appellant asked Noel Chesnut, a ranking officer for CDCR custody staff, to come to the clinic. Chesnut became enraged and shouted, "[A]re you refusing care?" Appellant tried to explain the policy, and Chesnut belligerently responded, "[A]re you refusing to treat?" He left and returned with Acting Superintendent Kenneth Fewer, who was angry at the perceived refusal to treat. Appellant tried to explain she was following directives and referred to Dr. Wisdom. Fewer responded, "I don't care what Dr. Wisdom has to say" and left.

On December 20, 2018, Dr. Wisdom called and informed appellant that her position as an SRN II would not be continued. Dr. Wisdom cited appellant's refusal to treat an employee. In a letter dated January 9, 2019, Dr. Wisdom informed appellant that she would return to her position as an RN on January 15, 2019.

Appellant is African-American, female, and over age 40.

Appellant's operative first amended complaint included five causes of action: (1) discrimination/disparate treatment based upon race (Gov. Code[1], § 12940); (2) harassment based on age and creation of a hostile work environment (§ 12900, et seq.); (3) age discrimination (§ 12940, subd. (a)); (4) gender discrimination (§ 12900, et seq.); and (5) reprisal (§ 12940, subd. (h)).

---

[1] Undesignated statutory references are to the Government Code.

The trial court determined appellant had abandoned her third and fourth causes of action. After considering the remaining causes of action, the court granted summary judgment and entered judgment in CDCR's favor.

DISCUSSION

*Summary Judgment Standard*

"A trial court properly grants a motion for summary judgment only if no triable issue exists as to any material fact and the defendant is entitled to judgment as a matter of law. [Citations.] 'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ."' [Citations.] On appeal, we examine the record de novo, viewing the evidence in the light most favorable to the plaintiff as the losing party and resolving any evidentiary doubts or ambiguities in her favor." (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620 (*Bailey*); Code Civ. Proc., § 437c.)

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

*Racial Discrimination Claim (§ 12940, subd. (a))*

FEHA prohibits employers from discriminating "in compensation or in terms, conditions, or privileges of employment" because of race. (§ 12940, subd. (a).) To establish a prima facie case of discrimination under FEHA, a plaintiff must provide evidence that: "(1) [she] was a member of a protected class, (2) [she] was qualified for the position [she] sought or was performing competently in the position [she] held, (3) [she]

suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).)

We apply the burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668], as modified for summary judgment. "The 'employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.'" (*Zamora v. Security Industry Specialists Inc.* (2021) 71 Cal.App.5th 1, 32.) An employer satisfying this initial burden is entitled to summary judgment "'"""unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing."'"""" (*Hodges v. Cedars-Sinai Medical Center* (2023) 91 Cal.App.5th 894, 904.)

"Ultimately, 'an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory . . . .'" (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 162.)

Here, appellant contends that CDCR discriminated against her by not continuing her position as SRN II. We conclude otherwise. CDCR satisfied its initial burden by showing that this employment action was grounded in legitimate, nondiscriminatory reasons—namely, appellant's comment regarding Filipino hiring and her refusal to treat a CDCR employee. Dr. Wisdom declared that these two incidents led to

the employment decision.  Appellant might object that CDCR misjudged her comment and her fidelity to the policy for medical treatment of employees as she understood it.  However, "if nondiscriminatory, [CDCR's] true reasons need not necessarily have been wise or correct."  (*Guz*, *supra*, 24 Cal.4th at p. 358.)  Appellant's Filipino remark can be viewed as improperly excluding members of a specific group, rather than appropriately promoting diversity.  And strict adherence to appellant's interpretation of CDCR policy could be deemed a lapse of judgment given the emergency character of the situation presented at the clinic.  CDCR's reasons do not remotely suggest a motive to discriminate against appellant based on race.

Appellant's own deposition undermines her case.  Appellant indicated she believed certain actions were taken because of her age, race, and gender.  Her subjective beliefs, however, are not admissible evidence to create a triable issue of material fact.  Appellant conceded that no one made any comment leading her to believe these actions were taken because of her protected characteristics.  Appellant stated Dr. Wisdom never said anything regarding her race, gender, or age over 40.  Appellant felt Dr. Wisdom did not support her "and maybe it was because I was black."  Appellant's "[s]peculation . . . is not evidence. . . . Neither does it even support an inference implying as much." (*Aguilar*, *supra*, 25 Cal.4th at pp. 864-865.)

Appellant failed to produce admissible evidence raising a triable issue of fact material to CDCR's showing.  Appellant's declaration features speculative charges of racial discrimination that her own deposition refutes.  Such speculation does not constitute evidence CDCR's stated reasons were "'either false or pretextual . . . .'"  (*Faust v. California Portland Cement Co.* (2007)

150 Cal.App.4th 864, 886.)  The admissible evidence is insufficient to permit a rational inference that CDCR's actual motive was discriminatory.

*Age Harassment and Hostile Work Environment*
*(§ 12900, et seq.)*

Under FEHA, it is unlawful for "an employer . . . or any other person, because of . . . age . . . to harass an employee . . . ." (§ 12940, subd. (j)(1).)  To prevail on a claim of hostile work environment under FEHA, an employee must show she was subjected to harassing conduct that was (1) unwelcome, (2) because of a protected characteristic, and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.  (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 692-693.)  "In addition, she must establish that the offending conduct was imputable to her employer."  (*Bailey*, *supra*, 16 Cal.5th at p. 627.)

Appellant's age harassment and hostile work environment claim fails because a reasonable factfinder could not find any putative harassment was due to her age.  As detailed above, appellant's deposition showed no actions were taken because of her age.  (See *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1103-1104 [plaintiff's deposition excerpt shifted burden by showing lack of causation].)  Supposition as to the existence of a causal connection cannot create a triable issue of fact.  "[A] party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.'" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co* (2011) 199 Cal.App.4th 1132, 1144-1145.)  Appellant's failure to do so warranted summary judgment.

7

*Retaliation Claim (§ 12940, subd. (h))*

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) The same modified *McDonnell Douglas* burden-shifting framework applies to FEHA retaliation and discrimination claims. (*Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 828; see also *Wawrzenski v. United Airlines, Inc.*, *supra*, 106 Cal.App.5th at p. 699.)

Under section 12940, subdivision (h), protected activity includes "oppos[ing] any practices forbidden under this part" or "fil[ing] a complaint, testif[ying], or assist[ing] in any proceeding under this part." (§ 12940, subd. (h); *Miller v. Department of Corrections & Rehabilitation* (2024) 105 Cal.App.5th 261, 285.)

"Standing alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination. . . . [C]omplaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Yanowitz*, *supra*, 36 Cal.4th at pp. 1046-1047.)

A reasonable trier of fact could not find that a causal link existed between any putative protected activity and CDCR's

8

action.  Through Dr. Wisdom's declaration, CDCR produced evidence the employment action was due to appellant's racial remark and refusal to treat, not any protected activity.  Appellant failed to raise a triable issue of fact as to CDCR's showing. Appellant's personal difficulties with Gerhart and Turner did not put CDCR on notice of potential illegal discrimination or harassment.  Appellant's report to Dr. Wisdom of misuse of state time by Gerhart and Turner based on a "pleasure outing" to Central California did not do so.  Without the predicate protected activity, the causation element cannot be met.  Appellant presented the "rare[]" employment case "appropriate for disposition on summary judgment . . . ."  (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 286.)

DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

9

Mark S. Borrell, Judge
Superior Court County of Ventura

_____

Weiner Law, Christopher A. Fortunati, Helen Y. Bryens, and Heidi Mattson for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Gabrielle H. Brumbach, Supervising Deputy Attorney General, and Kaprisha Cressel-Hosey, Deputy Attorney General, for Defendant and Respondent.