Filed 11/3/15  Cline v. Time Warner Cable, LLC CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| LADON CLINE, | |
| Plaintiff and Appellant, | E060693 |
| v. | (Super.Ct.No. CIVRS1208480) |
| TIME WARNER CABLE, LLC, et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph R. Brisco, Judge.  Affirmed in part; reversed in part.

Portner Law Offices and Michael G. Portner for Plaintiff and Appellant.

Hill, Farrer & Burrill, James A. Bowles and Casey L. Morris for Defendant and Respondent Time Warner Cable, LLC.

1

Plaintiff and appellant LaDon Cline appeals the grant of summary judgment motion in favor of defendant and respondent Time Warner Cable, LLC (TWC).[1] Beginning in 2007, Cline worked for TWC as a customer service representative. Sometime in 2010, she developed carpal tunnel syndrome and took days off. In 2011, she suffered from anxiety and stress. In 2012, she again was absent from work due to wrist pain and anxiety. Cline qualified for leave under the California Family Rights Act (CFRA) and/or the federal Family Medical Leave Act (FMLA). TWC terminated Cline on May 25, 2012, on the basis that Cline took more days than she was allowed under the CFRA and/or FMLA and that she failed to provide the proper medical certification to justify the additional days in violation of CFRA and/or FMLA and company policy. Cline filed her complaint alleging discrimination during employment, discrimination resulting in termination of employment, violation of the California Fair Employment and Housing Act (FEHA), failure to accommodate disability, failure to engage in interactive process to accommodate disability, retaliation, and wrongful termination.

The trial court granted TWC's motion for summary judgment finding that Cline had failed to meet her initial burden of demonstrating an adverse employment action due to disability discrimination. Cline contends on appeal that the trial court erred by granting TWC's motion for summary judgment as follows: (1) There were triable issues of fact as to her claims for violation of CFRA, disability discrimination, and failure to

---

[1] Summary judgment was also granted in favor of Cline's supervisor, Saul Vieyra; Cline does not appeal the grant of summary judgment as to her claims against Vieyra (see fn. 3 *post*).

2

accommodate; (2) the trial court erred by overruling her objection to the admission of records and employee statements from a third-party company, Unum, which was charged with administering employee leave for TWC, as the records were admitted without being authenticated or without foundation, and were inadmissible hearsay; and (3) there was a triable issue of fact as to whether she submitted the appropriate documentation of medical certifications to support her leave time.

We conclude the trial court should have sustained objections made by Cline to the Unum records. Statements by Unum employees made in time records that detailed the days Cline was absent from work and the determination by Unum that her medical certification was insufficient within company policy, and to support she was covered by FMLA and/or CFRA, were not qualified as business records under Evidence Code section 1271 and no exception was provided to admit the statements. Without such evidence, TWC could not meet its burden to negate an essential element of Cline's prima facie case of discrimination, or that there was a nondiscriminatory, legitimate reason for her termination of employment. We reverse the grant of the summary judgment motion.

**FACTUAL AND PROCEDURAL HISTORY**

A.    TWC'S STATEMENT OF UNDISPUTED FACTS

Cline started working for TWC in August 2007 as a customer service representative. On August 28, 2007, she received an employee handbook that detailed that TWC had a policy prohibiting discrimination and that she could report any problems to the human resources department. In July 2010, TWC granted Cline FMLA leave for

3

carpal tunnel syndrome, and when Cline returned to work, TWC had an ergonomic specialist set up her workspace.

Between September 25, 2008, and February 22, 2012, Cline received 14 corrective action notices regarding her absences from work. Unum, TWC's third-party benefits administrator, denied Cline's request for FMLA and/or CFRA leave between June and July 2011 because they determined that Cline had already exhausted her leave allotment for the year. In addition, Unum determined Cline failed to provide proper documentation to substantiate the need for the leave. Cline failed to complete an Americans with Disabilities Act (ADA) packet as requested by TWC, to determine whether she qualified for additional absences under that section.

On November 2, 2011, TWC issued Cline a written warning for failing to follow the leave of absence policy and the ADA information regarding her leave for June and July 2011, which caused Cline to incur 35 days of unexcused absences in excess of her approved FMLA and/or CFRA leaves.

On February 22, 2012, TWC issued a final written warning to Cline about 11.5 additional unexcused absences that exceeded her FMLA and/or CFRA leave. In January 2012, Cline requested intermittent medical leave, but it took her until April 2012 to submit the supporting documentation. After receiving medical certification, Unum retroactively approved Cline's request for intermittent FMLA and/or CFRA leave for the period of January 2012 to January 2013, not to exceed four times per month for treatment and four times per month for episodes of incapacity lasting up to one day each. In March 2012, Cline missed work on seven days; in April 2012, she missed work on 11 days; and

in May 2012, she missed work on six days. TWC noted that Cline admitted in her deposition that she exceeded the eight days each month and was advised by TWC and Unum that she had to provide additional medical certification. Cline was informed on April 5, 2012, that she was exceeding the time off approved by medical certification and that she was exceeding her FMLA and/or CFRA allotment.

On April 27, 2012, Unum sent a letter to Cline asking her to submit additional medical certification by May 12, 2012, to support her need for additional absences. On May 15, 2012, she was sent another letter informing her that because she did not submit the required documentation, her leave was not approved after April 23, 2012. On May 25, 2012, she was terminated for failing to follow the leave of absence procedures.

In support of these facts, TWC presented several exhibits. TWC attached excerpts from a deposition of Cline. Cline had pain in her wrists in 2010. She developed anxiety in July 2011. Cline acknowledged that in 2012 she was approved for FMLA and/or CFRA leave for treatment four times each month, and four times each month for episodes. Cline acknowledged that she took more than eight days each month and that TWC human resource manager Anne Long advised her she had to provide additional documentation in order to take more than eight days. Cline continued to take more than eight days each month after the notice from Long due to carpal tunnel joint pain and stress. Cline had no idea how many days in excess of her FMLA and/or CFRA days she took. She had never seen a summary of her attendance. She noted that there were times listed on warnings she received, where she was actually out on what she believed to be approved leave, but was marked absent. Cline believed that in the middle of 2011 she

5

was on leave and her doctor had sent in the appropriate paperwork. She received additional documentation from her doctor after her termination to support being absent more than eight days.

TWC also presented corrective action notices and TWC performance feedback forms. The corrective action forms provided by Unum detailed her absences, that she had exhausted her FMLA and/or CRFA leave, and that she needed to provide additional certification to take additional leave. She signed the forms acknowledging she had received the documents. These forms also detailed that she had been given a packet to submit to qualify under the ADA, but had not returned it according to Unum. Cline's performance evaluations also detailed that Unum had notified TWC that she had been taking unauthorized leave.

Exhibit No. 5 was a summary of Cline's attendance for the period of January 1, 2009, through May 26, 2012. It detailed the days that she was absent, which were not approved as FMLA and/or CFRA time.

TWC submitted exhibit No. 32, which was a letter from TWC to Cline. Unum had notified TWC that Cline had been denied FMLA and/or CFRA coverage beginning June 6, 2011, due to a lack of medical certification. Cline was advised to return the medical certification or return to work by July 12, 2011. Long sent an email to Cline as to the dates that Unum had approved her leave, but there were outstanding days from June 6 to July 14, 2011, and August 30 to September 17, 2011, which were not approved.

6

Exhibit No. E was a medical certification from Kaiser that was sent to Unum. It included the language, "Patient under medical management and care for a chronic health condition and will require intermittent time off work of 2-4 times per month, 1 weekday per week, with each episode lasting 4-8 hours for flare ups and or to go to dr appts starting 1/19/12 and lasting for 1 year." (All caps. omitted.)

TWC also submitted a declaration from Elissa L. Gysi. She was an attorney that represented TWC. Gysi essentially declared that the aforementioned exhibits were true and correct copies. She subpoenaed records from Kaiser Hospital, which included certification from the custodian of records from Kaiser. The records provided that Cline received treatment between March and May 2012 for her disability. Gysi reviewed Cline's attendance records (exh. No. 5). Those records showed Cline missed seven days in March 2012, 11 days in April 2012, and eight days in May 2012. Between March and May 2012, Cline was in treatment only two days.

Anne Long was employed by TWC as a human resource manager. She met Cline in August 2007 when Cline was hired to be a customer service representative. Long declared that on June 6, 2011, Cline went out on "FMLA leave" even though her FMLA and/or CFRA allotment for the year had been exceeded. Long was notified by Unum on June 27, 2011, that this was an unapproved absence. Further, TWC sent an ADA packet to Cline and requested it be returned by July 12, 2011, with the appropriate medical certification. Long met with Cline to provide the certification. Cline never provided the certification for ADA qualification.

Long had a conference call with Cline on August 25, 2011, to resolve the absences. Cline was informed she had to provide medical certification to Unum. Long received an email from Unum regarding Cline's August to October 2011 absences, which Unum stated were not allowed under FMLA and/or CFRA (her 12 weeks were exhausted) and she had no sick leave. Long sent Cline an email detailing the unapproved absences. Long sent Cline a written warning on October 28, 2011, that she had not complied with the absence procedure by failing to provide medical certification. The warning detailed that Cline had 35 unexcused absences. Cline acknowledged that she had received the warning.

Another warning was sent on February 22, 2012. Cline had an additional 11.5 days unexcused either as absences or leaving work early. She had provided no medical certification. Cline signed the warning. On April 4, 2012, Unum sent an email to Cline that she had been certified for intermittent FMLA leave from January 19, 2012, to January 19, 2013, of four times per month for treatment and four times per month for possible episodes. Long declared, "I interpreted this certification to mean that Cline was approved to take intermittent FMLA leave of up to eight days per month." Long met with Cline and Cline was advised that she had to comply with the FMLA and/or CFRA requirements; she could take no additional leave unless she applied for an ADA accommodation. Long also told Cline that she had to report all of her absences to Unum.

On April 27, 2012, Cline was notified by Unum that she was taking more time off than approved by FMLA. Unum requested that she provide medical certification for the additional time off. Any time taken after April 22, 2012, was not approved. Unum

8

received no certification by May 17, 2012. TWC also presented several letters from Unum to Cline from March 2012 through May 15, 2012, detailing that she was not approved for FMLA and/or CFRA leave and that she needed to provide proper medical certification.

Long attested a true and correct copy of Cline's attendance record from August 2011 to May 2012 was attached as exhibit No. 5. On May 18, 2012, Long prepared a termination letter; it was sent to Cline on May 25, 2012. Long attested that if Cline had provided proper medical certification for the time period of March though May 2012, she would not have been terminated. On May 25, 2012, Cline was terminated on the grounds that she failed to "follow the leave of absence procedure."

Additionally, TWC presented evidence that in response to a request for admission, Cline admitted that between February 2012 and May 2012 the only treatment she sought for FMLA qualified medical treatment was from Kaiser.

### B. CLINE'S OBJECTIONS TO SUMMARY JUDGMENT MOTION

Since we conclude *post* that TWC did not meet its burden in their motion for summary judgment, Cline was not required to present evidence in opposition to the motion. We do note that Cline objected to the admission of statements by employees of Unum and any documents from Unum. Cline provided in her opposition that TWC had failed to provide any foundation or exception to the hearsay rule as to Unum's documents and statements by Unum's employees. TWC could not rely on the statements of Unum that Cline had exhausted her FMLA and/or leave and failed to provide medical certification.

9

In addition, in her detailed separate statement of undisputed facts, Cline stated she was objecting to every document prepared by Unum, and any statements made by employees of Unum to TWC employees. Cline also filed separate objections to evidence in which she objected to the evidence supporting the summary judgment motion, including the declarations of Long and Gysi and the exhibits discussed in their declarations, on the grounds of hearsay, foundation and lack of personal knowledge.

C.     COMPLAINT

Cline filed her complaint for damages on November 1, 2012. She alleged, as pertinent to the claims in this appeal, as follows: First Cause of Action—disability discrimination during employment in violation of FEHA (Gov. Code, § 12940);[2] Second Cause of Action—disability discrimination resulting in termination of employment in violation of FEHA (§ 12940); Fourth Cause of Action—failure to accommodate disability (§ 12940, subd. (m)); Seventh Cause of Action—violation of the CFRA (§ 12945.2); and her Ninth Cause of Action—wrongful termination in violation of public policy.[3]

---

[2] All further statutory references are to the Government Code unless otherwise indicated.

[3] Cline only appeals these causes of action. As stated *ante*, she does not appeal the grant of summary judgment as to her claims of harassment by her supervisor, Saul Vieyra, and other causes of action. We will not review the evidence as to those claims.

Cline alleged that she was employed by TWC from August 2007 until May 25, 2012. She had exhausted her administrative remedies and was granted the right to sue on June 27, 2012. She alleged that during her employment she suffered serious injuries, which rendered her disabled. TWC was aware of her disabilities. Cline was discriminated against because of her disabilities and for taking disability leave. Due to her disability, she was terminated on May 25, 2012. TWC violated section 12940 by terminating her employment. She was part of a protected class under FEHA. Further, she alleged she was not provided accommodation for her disability. TWC terminated Cline in retaliation for her disability. Cline had to take leave due to her disability under CFRA and/or FMLA. When she returned, she was denied leave under section 12945.2. She was harassed and ultimately terminated due to the leave. She also alleged that she could not be terminated due to her disability; such discrimination violated public policy.

TWC filed an answer raising 18 affirmative defenses.

TWC filed its motion for summary judgment on September 25, 2012. TWC claimed that Cline's causes of action for disability discrimination, retaliation, violation of CFRA, and wrongful termination under public policy fail because she was terminated for legitimate business reasons. Further, her causes of action for failure to accommodate disability and cause of action under the CFRA fail because she was granted every accommodation that she properly requested.

D.    TRIAL COURT RULING

The matter was heard on December 20, 2013. Cline argued that TWC had not laid a foundation for the records from Unum. Cline argued, "without the Unum forms, their

11

entire motion fails, because they can't show she didn't comply with the requirements of [CFRA]." TWC countered that Long had declared in her declaration that they were business records of Unum. Unum was TWC's agent for purposes of dealing with FMLA issues. Further, Cline never denied receiving the records, and therefore, they were properly authenticated. Cline's counsel responded that the fact they were sent by email or received by Cline did not make them business records; Unum must provide they were true and correct copies made at the time of the events. The trial court took matter under submission.

In its written notice of ruling, the trial court first overruled Cline's hearsay objections without stating its reasoning. It then concluded that "Plaintiff failed to meet her initial burden of demonstrating that she suffered an adverse employment action due to disability discrimination under FEHA." The trial court relied upon TWC's material facts, Cline's additional facts, Cline's deposition with supporting exhibits, and the declarations of Gysi and Long with supporting exhibits.

The trial court ruled, "Nothing in Plaintiff's deposition or her documentary evidence indicates that her employer discriminated against her because of her disability. Instead, much of her testimony and evidence suggests that her employer allowed her to use her allowable FMLA and/or CFRA leave time to obtain treatment for her injury and to allow it to heal. Indeed, Plaintiff's evidence establishes that she was not terminated because of her disability, but rather because of her repeated failure to adhere to the procedures for seeking, obtaining and taking FMLA and/or CFRA leave time. This led to an excessive number of unexcused absences from work in violation of her employer's

attendance policy, and that despite repeated warnings, Plaintiff continued to take unexcused time off from work. [¶] Plaintiff's deposition and documentary evidence also supports her employer's argument that it gave her reasonable accommodations for her disability, and properly engaged in an interactive process. Plaintiff's documents indicate that it was she, not her employer, who failed to follow the proper procedures for the submission of documentation on the requisite forms. [¶] . . . [¶] In short, there are no triable issues of material fact as to the failure to accommodate, harassment, retaliation, violation of FMLA and/or CFRA, and wrong termination claims."

## DISCUSSION

### A.    STANDARD OF REVIEW

"A trial court may only grant a motion for summary judgment if no triable issues of material fact appear and the moving party is entitled to judgment as a matter of law." (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.) "[G]enerally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [s]he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.)

In cases involving FEHA, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354; see also *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-805.) This approach requires the plaintiff "to establish a prima face case of [an unlawful employment practice.] [¶] If the plaintiff meets this burden, ""'the burden

13

shifts to the defendant to [articulate a] legitimate nondiscriminatory reason for its employment decision. . . .' . . ."' . . . . [¶] . . . [I]f the defendant presents evidence showing a legitimate, nondiscriminatory reason, the burden again shifts to the plaintiff to establish the defendant intentionally [engaged in an unlawful employment practice] against him or her. [Citation.] The plaintiff may satisfy this burden by proving the legitimate reasons offered by the defendant were false, creating an inference that those reasons served as a pretext for [the unlawful employment practice]." (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159-160 (*Wills*).)

"A defendant's summary judgment motion 'slightly modifies the order of these . . . showings.' [Citation.] Consequently, the [defendant] ha[s] the initial burden to either (1) negate an essential element of [the plaintiff's] prima facie case [citation] or (2) establish a legitimate, nondiscriminatory reason for [the adverse action]. [¶] '[T]o avoid summary judgment [once the employer makes the foregoing showing], an employee . . . must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in [an unlawful employment practice].'" (*Wills*, *supra*, 195 Cal.App.4th at p. 160.)

We note that the trial court applied the wrong standard in granting TWC's summary judgment motion. The trial court stated, "Plaintiff failed to meet her initial burden of demonstrating that she suffered an adverse employment action due to disability discrimination under FEHA." It then recounted the evidence presented by Cline in

14

opposition to the summary judgment motion as evidence that she failed to show discrimination. However, the initial burden was on TWC to negate an essential element of Cline's prima facie case or to present evidence that the adverse employment action was based upon legitimate, nondiscriminatory factors. (*Wills*, *supra*, 195 Cal.App.4th at p. 160.)

Nonetheless, we evaluate a summary judgment ruling de novo, independently reviewing the record to determine whether there are any triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1258.)

B. ANALYSIS

We conclude that TWC did not meet its initial burden of presenting admissible evidence showing either that one or more elements of Cline's prima facie case was lacking or that the employment action was based upon legitimate, nondiscriminatory factors. TWC's motion for summary judgment was based on its claim that Cline had extensive absences in excess of her FMLA and/or CRFA credits and had failed to provide medical certification for that leave. However, the evidence presented by TWC to support its claim that Cline no longer had CFRA and/or FMLA leave credits, or that she had failed to provide proper medical certification, consisted of Unum records and statements by Unum employees, which were inadmissible hearsay. As such, the trial court

15

improperly granted summary judgment on the First, Second, Fourth, Seventh and Ninth Causes of Action.

FMLA is the federal provision that allows an eligible employee to take medical leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." (29 U.S.C. § 2612(a)(1)(D).) "The CFRA [FMLA's state counterpart] is contained within the California Fair Employment and Housing Act (FEHA)." (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 487 (*Rogers*).) "The CFRA has two principal components: a right to leave of up to 12 weeks in any 12-month period to care for a family member or for the employee's own medical condition [citation], and a right to reinstatement in the same, or a comparable, position at the end of the leave." (*Richey v. Autonation, Inc.* (2015) 60 Cal.4th 909, 919; see also § 12945.2.)

"By prohibiting 'employment discrimination based upon family and medical leave, the CFRA strengthens the FEHA's general goal of preventing the deleterious effects of employment discrimination, and also furthers the CFRA's specific goal of promoting stability and economic security in California families.' [Citation.]" (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 878, fn. omitted (*Faust*).) "An employee who takes CFRA leave is guaranteed that taking such leave will not result in a loss of job security or other adverse employment actions." (*Rogers*, *supra*, 198 Cal.App.4th at p. 487.)

"With respect to the requirements for requesting leave, section 12945.2 provides in relevant part at subdivision (k): '(1) An employer may require that an employee's request for leave because of the employee's own serious health condition be supported by a certification issued by his or her health care provider. That certification shall be sufficient if it includes all of the following: [¶] (A) The date on which the serious health condition commenced. [¶] (B) The probable duration of the condition. [¶] (C) A statement that, due to the serious health condition, the employee is unable to perform the function of his or her position. [¶] (2) The employer may require that the employee obtain subsequent recertification regarding the employee's serious health condition on a reasonable basis, in accordance with the procedure provided in paragraph (1), if additional leave is required. [¶] (3)(A) In any case in which the employer has reason to doubt the validity of the certification provided pursuant to this section, the employer may require, at the employer's expense, that the employee obtain the opinion of a second health care provider, designated or approved by the employer, concerning any information certified under paragraph (1).'" (*Faust*, *supra*, 150 Cal.App.4th at p. 880, fn. omitted.)

In order to prove a prima facie case of CFRA discrimination (Cline's Seventh Cause of Action) the employee must show that: (1) the employer was subject to the CFRA; (2) the employee was eligible for CFRA leave; (3) the employee exercised his or her right to take a qualifying leave; and (4) the employee suffered an adverse employment action because he or she exercised the right to take CFRA leave. (*Rogers*, *supra*, 198 Cal.App.4th at pp. 490-491.) "A prima facie case for discrimination 'on

grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." (*Faust*, *supra*, 150 Cal.App.4th at p. 886.)

As set forth *ante*, it was TWC's burden to "either (1) negate an essential element of [the plaintiff's] prima facie case [citation] or (2) establish a legitimate, nondiscriminatory reason for [the adverse action]." (*Wills*, *supra*, 194 Cal.App.4th at p. 160.) TWC relied almost exclusively on Unum records, information obtained from Unum documents, and statements from Unum employees to support its motion for summary judgment on the grounds that Cline took excessive leave and that she failed to provide proper medical certification.

Evidence Code section 1414 provides: "A writing may be authenticated by evidence that: [¶] (a) The party against whom it is offered has at any time admitted its authenticity; or [¶] (b) The writing has been acted upon as authentic by the party against whom it is offered." Authentication may be established by circumstantial evidence. (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1435.) For instance, the contents of documents themselves and their physical location are valid means of authentication. (*People v. Smith* (2009) 179 Cal.App.4th 986, 1001-1002; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1372-1373.) Unum's records were properly authenticated.

However, the trial court erred by relying upon the contents of those documents in ruling on the motion for summary judgment. Evidence Code section 1271 provides: "Evidence of a writing made as a record of an act, condition, or event is not made

18

inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." We do not disturb evidentiary rulings made by the trial court in connection with a motion for summary judgment in the absence of an abuse of discretion. (*Barnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

The trial court gave no reason for overruling Cline's objections to the documents prepared by Unum nor on any hearsay statements obtained from Unum's employees that were relied on by TWC. Moreover, TWC has made no attempt on appeal to establish that the Unum records, including the documents that detailed Cline's absences and for which she had not provided proper medical certification, were business records. TWC only argues that they were properly authenticated. These records were offered to support that Cline was taking excessive absences but did not have FMLA and/or CRLA time and that she failed to provide proper medical certification to cover the absences. This information came from Unum, the third party company hired by TWC to administer leave. There was no evidence of how Unum prepared their absence leave reports, or how it determined that medical certifications Cline alleged to have submitted were improper. Documents prepared by Unum and any statements relied upon by TWC that came from Unum records or statements from employees clearly were inadmissible hearsay. TWC had the burden of producing admissible evidence to negate an essential element of Cline's prima

19

facie case or establish a legitimate, nondiscriminatory reason for terminating Cline. TWC failed to meet this burden.

For the first time at oral argument, TWC argued that Long properly qualified the records as business records and that the records were admitted for the non-hearsay purpose of showing Long's state of mind. We will not consider these new arguments made for the first time at oral argument.

TWC contends that this evidence merely corroborated other admissible evidence, rendering the admission of Unum records, documents, and statements harmless. TWC contends that the trial court would have reached the same conclusion based on Cline's deposition testimony, Long's declaration, and TWC's own records, which contain the same factual assertions reflected in the Unum documents, that TWC granted Cline every leave of absence for which she provided proper medical certification, and that Cline was terminated because of her violation of TWC policy by failing to provide a medical certification to substantiate her need for leave. Based on the citations in TWC's respondent's brief, we disagree that these records were based solely on information generated by TWC or were independent of the Unum evidence.

TWC relies on Long's declaration. However, her declaration specifically states she was informed by Unum employees that Cline had failed to provide proper medical certification for her absences and she knew of Cline's excessive absences in violation of TWC's policies from Unum.

20

TWC also relies upon Cline's deposition testimony. Cline acknowledged that TWC did give her leaves of absence for medical conditions; she was asked by TWC and Unum to provide medical certification to support her leave; that she received additional medical certification from Kaiser after her termination; and that she was fired for failing to follow the leave of absence procedures. She did acknowledge that TWC advised her she was approved for taking eight days off each month from January 19, 2012, to January 19, 2013, and that she did take more than eight days in March, April and May 2012. She also stated she returned a doctor note to substantiate that additional leave in which the treating doctor stated, "I stated intermittent, which means intermittent." Long told her this was insufficient documentation. Cline had no idea how many days in excess of her FMLA and/or CFRA leave she had taken.

Based on Cline's testimony, she did admit that she took more than eight days in March, April and May 2012. However, she stated that she provided further medical certification, but Long told her it was rejected. Nothing in Cline's testimony shows that she acknowledged she had exhausted her FMLA and/or CFRA leave for the time period involved (2012) or that she was aware that she was taking leaves of absence improperly. Cline's deposition testimony does not support TWC's summary judgment motion.

TWC also relies upon the corrective action and performance forms given to Cline, Kaiser Hospital records, subpoenas for medical records, the request for admission answered by Cline, and the termination recommendations and letter of termination sent to Cline. Even though these documents were generated by TWC, it is clear all of the information contained in the documents was obtained from Unum. There is no way for

this court to determine the reliability of that information. The records were not business records and the statements made by Unum employees to Long were hearsay. TWC also relies on exhibit No. 5, which is clearly a detailed absence report prepared by Unum. At oral argument, TWC contended that exhibit No. 5 was a TWC document and that Cline did not object to the exhibit. Initially, exhibit No. 5 has no heading or other marking that indicates it was a TWC record. In fact, it is entirely unclear who prepared the document. Further, Cline included in her objections to TWC's evidence that she sought to have exhibit No. 5 stricken from the evidence. Further, TWC relies on emails sent to Cline. However, these all are based on statements made by Unum employees regarding Cline's absences and failure to obtain medical certification. Finally, TWC relies on deposition testimony from Cline, which was attached to Cline's opposition to the summary judgment motion. Based on the burden of proof, TWC cannot rely on this evidence.

Here, TWC based their summary judgment motion on their insistence that they fired Cline because she had unexcused absences that exceeded her approved FMLA and/or CFRA leave, or she had failed to provide proper medical certification within company policy and FMLA and/or CFRA leave policy. However, the evidence presented by TWC, that Cline had unexcused absences, all came from Unum. Without the records from Unum, there was a triable issue as to whether Cline had taken an excessive number of unexcused absences from work in violation of her employer's attendance policy. Further, there was an issue if she had violated company policy or failed to meet the requirements of FMLA and/or CFRA.

22

In conclusion, TWC failed to meet its burden of establishing a legitimate, nondiscriminatory reason for terminating Cline's employment, or to negate an element of Cline's prima facie case. As such, summary judgment on Cline's First, Second, Fourth, Seventh, and Ninth Cause of Action should not have been granted.

**DISPOSITION**

The judgment is reversed with respect to the First, Second, Fourth, Seventh, and Ninth Causes of Action, and the matter is remanded for further proceedings thereon; the judgment is otherwise affirmed. Cline is awarded her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

RAMIREZ _____

P. J.

KING _____

J.

23