Filed 4/4/25  Blue Banner Company v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| BLUE BANNER COMPANY, INC., | |
| Petitioner, | E083453 |
| v. | (Super. Ct. No. CVRI2201018) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| HERMENEGILDO GONZALEZ, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Chad W. Firetag, Judge.  Denied

Jackson Lewis, Arthur K. Cunningham, Alexis N. Hishmeh, and Dylan B. Carp, for Petitioner.

Southern California Labor Law Group, Taylor M. Prainito, Michael Zelman, and Brooke C. Bellah, for Real Party in Interest.

No appearance for Respondent.

1

I.

INTRODUCTION

Petitioner Blue Banner Company, Inc. (BB) terminated the employment of real party in interest Hermenegildo Gonzalez, after he was observed allowing a subordinate employee to operate a forklift in an unsafe manner. Gonzalez filed a wrongful termination complaint and first amended complaint (FAC) against BB and other defendants, alleging age and disability discrimination, retaliation, and other related claims.

The trial court denied BB's request for summary judgment but granted BB's motion for summary adjudication of the second and fourth causes of action for age harassment and disability harassment. The trial court also granted summary adjudication of the twelfth cause of action for intentional infliction of emotional distress, and as to punitive damages. The trial court denied summary adjudication of the remaining causes of action.

BB filed a petition for writ of mandate requesting this court to issue a writ of mandate directing the trial court to vacate its order denying BB's motion for summary judgment and enter a new order granting it. BB contends that Gonzalez failed to raise a triable issue of fact. We disagree and deny BB's request for a writ of mandate.

## II.

## FACTS AND PROCEDURAL BACKGROUND

A. *Undisputed Background Facts*

BB is a fruit packing company that grows, packs, and ships fruit, primarily grapefruit. Gonzalez, who is 65 years old, began working for BB in March 1983. Gonzalez was terminated from BB in March 2020, after 37 years of employment. He was hired as a forklift driver and promoted to shipment receiver in 1990. His job responsibilities as a receiver included unloading items from trucks, inspecting goods for damage, driving a forklift, billing orders, and taking shipment inventory. He was also required to closely monitor and supervise forklift operators.

In 2019, Gonzalez slipped and fell at work. He did not report the incident to his supervisor, Jim Layes. Gonzalez had a second accident in 2019, in which he hit a pole in the warehouse while driving a forklift, and experienced back pain. He did not request at that time to be sent to a company doctor for the injury.

Gonzalez's employment with BB went largely without issue until 2019 when BB underwent management changes. On November 8, 2019, Gonzalez was given a verbal warning by Layes, for allowing BB employee, Rubin Alcaraz, to transport eight stacked bins on a forklift in an unsafe manner. Gonzalez signed the work notice but claimed he did not see Alcaraz when the incident occurred.

On February 6, 2020, Gonzalez advised BB human resources department employee, Espie Estrada, that he was suffering from back pain. BB did not refer him to a

3

company workers' compensation doctor. Gonzalez was told to see his own doctor under his personal insurance, which he did.

On February 10, 2020, Gonzalez received a written work notice from BB supervisor, Martin Diaz, reprimanding him for showing up early for work, at 2:00 p.m., when he was scheduled to start working at 2:30 p.m. Gonzalez signed the written work notice.

Gonzalez submitted a workers' compensation claim for injuries beginning on February 4, 2019, and continuing until February 4, 2020. BB received a letter dated February 13, 2020, from Gonzalez's workers' compensation attorney, informing BB of Gonzalez's workers' compensation claim.

On March 4, 2020, Gonzalez received a written work notice by Diaz, for not following his work assignment, by failing to report to work at 4:00 p.m. on February 27, 2020. The work notice stated it was a "Last warning. Next time termination." Gonzalez stated in his declaration and in deposition testimony that he refused to sign the written work notice because his supervisor at that time, Omar Garcia,[1] told him not to come in that day.

On March 5 and 7, 2020, BB provided all employees in the shipping and receiving department, including Gonzalez, with forklift safety training. BB's director of operations, Kevin Nye, stated in his declaration that, during the safety training on March

---

[1] Because Gonzalez also had a previous supervisor by the name of Rudy Garcia, we use Omar Garcia's first and last name throughout this opinion when referring to him.

4

5, 2020, shipping and receiving employees were advised that forklifts must be operated in reverse when carrying more than two bins and that no more than three full bins or four empty bins were permitted to be transported on a forklift at one time.

On March 11, 2020, Vincent Mazzetti, Vice President of BB, saw Alcaraz driving a forklift forward carrying stacked bins, while Gonzalez walked alongside the forklift. Mazzetti spoke to BB supervisors Omar Garcia and Layes about the safety violation and told them the two workers should be terminated. Thereafter, Alcaraz and Gonzalez were both terminated. Gonzalez refused to sign the discharge work notice dated March 11, 2020. The work notice stated that he was being terminated for failure to operate a forklift in a safe manner by driving forward with his view obstructed by "3 or 6 bins," after receiving training instructing him not to do so, and after receiving a similar verbal reprimand and work notice on November 8, 2019. The discharge work notice was signed by Omar Garcia.

B. *Wrongful Termination Complaint*

On March 11, 2021, Gonzalez filed a verified FEHA claim with the Department of Fair Employment and Housing and received a letter to sue.

On March 11, 2022, Gonzalez filed a wrongful termination complaint, and thereafter, filed a first amended complaint (FAC) against BB,[2] alleging the following 12 causes of action: (1) age discrimination in violation of the FEHA; (2) age harassment

---

[2] The FAC also names as defendants BB employees Jim Layes, Martin Diaz, Omar Garcia, Michael Lewin, and Vincent Mazzetti.

under FEHA; (3) disability discrimination under FEHA; (4) disability harassment under FEHA; (5) failure to provide reasonable accommodation under FEHA; (6) failure to engage in the interactive process; (7) retaliation under FEHA; (8) failure to prevent discrimination, harassment, and retaliation under FEHA; (9) retaliation under Labor Code section 6310; (10) wrongful termination in violation of public policy; (11) violation of Labor Code section 1102.5; and (12) intentional infliction of emotional distress.

C. *Motion for Summary Judgment or Summary Adjudication*

In July 2023, BB filed a motion for summary judgment or, alternatively, for summary adjudication (MSJ/MSA), with supporting exhibits and declarations by BB's director of operations, Kevin Nye, and BB's attorney, Arthur Cunningham. BB argued that Gonzalez was terminated for failure to comply with safety procedures, which is a legitimate, non-discriminatory reason. Specifically, Gonzalez was terminated on March 11, 2020, "due to his failure to operate and supervise workers using the forklifts in a safe manner following previous warnings and training." BB further argued that Gonzalez did not inform BB of his disability or request an accommodation, and BB did not learn of Gonzalez's workers' compensation claim until after Gonzalez was terminated. BB asserted that Gonzalez's related claims lack merit for similar reasons.

Gonzalez filed opposition to BB's MSJ/MSA, with supporting exhibits and declarations by Gonzalez, Alcaraz, and Gonzalez's attorney, Brooke Bellah. Gonzalez argued in his opposition that triable issues of fact exist as to whether BB was aware of his disability and whether Gonzalez requested accommodation before BB terminated him.

6

Gonzalez further argued there is evidence BB refused to provide him with any accommodations or refer him to a doctor for his work-related injuries. Gonzalez asserted he established a prima facie case of age and disability discrimination, and BB's alleged reasons for terminating him were pretextual. Younger employees were not terminated for similar safety violations. Gonzalez argued his other causes of action are derivative of his discrimination claims, and therefore summary adjudication should be denied as to them as well.

BB filed a reply to Gonzalez's opposition, arguing that Gonzalez failed to effectively dispute the ultimate facts supporting BB's motion for summary judgment. In addition, Gonzalez failed to provide any evidence showing that BB's legitimate nondiscriminatory reasons for terminating Gonzalez were pretext.

On February 16, 2024, the trial court heard BB's MSJ/MSA. After considering the pleadings and supporting evidence, and hearing oral argument, the trial court ruled on the parties' evidentiary objections and denied BB's motion for summary judgment. The court also denied summary adjudication, except as to the second, fourth, and twelfth causes of action (age harassment, disability harassment, and intentional infliction of emotional distress). The court also granted summary adjudication as to punitive damages.

On March 13, 2024, BB filed a petition for writ of mandate, and thereafter, an amended writ petition, with a request for a stay, which this court granted. BB requests in its writ petition that this court issue a peremptory or alternative writ of mandate directing the trial court to vacate its order denying BB's motion for summary judgment and enter a

7

new order granting the motion. Gonzalez filed preliminary opposition, and BB filed a reply. This court ordered the parties to show cause why the requested relief should not be granted. Thereafter, Gonzalez filed a return, and BB filed a travers.

III.

LAW APPLICABLE TO SUMMARY JUDGMENT AND ADJUDICATION

The purpose of the laws of summary judgment and summary adjudication are "to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859 (*Serri*).) Under summary judgment law, a defendant may file a motion for summary judgment on a defense contending that the action has no merit. (Code Civ. Proc., § 437c, subd. (a); *Aguilar*, *supra*, at p. 843.)

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Serri*, *supra*, 226 Cal.App.4that p. 860, citing *Aguilar*, *supra*, 25 Cal.4th at p. 845.)

8

Under Code of Civil Procedure section 437c, subdivision (f)(1), "[a] party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty." "Summary adjudication motions are 'procedurally identical' to summary judgment motions." (*Serri*, *supra*, 226 Cal.App.4th at p. 859.)

"A defendant moving for summary adjudication of a cause of action must show either that one or more elements of the cause of action cannot be established or that there is a complete defense. '[A]ll that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action. . . . [T]he defendant need not himself conclusively negate any such element . . . .' [Citations.] If that burden is met, the burden shifts to the plaintiff to show the existence of a triable issue of fact with respect to that cause of action or defense." (*Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 16-17, quoting *Aguilar*, *supra*, 25 Cal.4th at p. 853; see also Code Civ. Proc., § 437c, subd. (p)(2).)

We review motions for summary judgment and summary adjudication "de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. [Citations.] We are not bound by the trial court's stated reasons or rationales. [Citation.] . . . Summary judgment is a drastic remedy to be used sparingly, and any doubts about the propriety of summary judgment must be resolved in favor of the opposing party. [Citations.]" (*Mateel Environmental Justice Foundation v. Edmund A. Gray Co.*, *supra*, 115 Cal.App.4th at p. 17.)

9

IV.

APPLICABLE EMPLOYMENT LAW

BB challenges the trial court's order denying BB's MSJ/MSA as to Gonzalez's age

and disability employment discrimination causes of action, and other related causes of

action. Federal and state laws prohibit employers from discriminating against employees

on the basis of age, disability, and other protected classifications. (Gov. Code, §§ 12940,

subd. (a), 12941, subd. (a)[3]; 42 U.S.C. § 2000e et seq. [Title VII of the Civil Rights Act of

1964 (Pub.L. No. 88-352 (July 2, 1964) 78 Stat. 241)].)

In employment discrimination cases, "we analyze the trial court's decision on a

motion for summary judgment using a three-step process that is based on the burden-

shifting test that was established by the United States Supreme Court for trials of

employment discrimination claims in *McDonnell Douglas Corp. v. Green* (1973) 411

U.S. 792. [Citations.] This test 'reflects the principle that direct evidence of intentional

discrimination is rare, and that such claims must usually be proved circumstantially.

Thus, by successive steps of increasingly narrow focus, the test allows discrimination to

be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily

explained.' [Citation.]" (*Serri*, *supra*, 226 Cal.App.4th at p. 860.)

Under the three-part burden-shifting test, the plaintiff employee has the initial

burden to make a prima facie case of discrimination. "[A] plaintiff's prima facie burden

is minimal. 'The amount [of evidence] that must be produced in order to create a prima

---

[3] Unless otherwise noted, all statutory references are to the Government Code.

10

facie case is "very little."'" (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 197.) The employer then must rebut the presumption of discrimination with evidence that the employer's actions were taken for a legitimate, nondiscriminatory reason. The burden then shifts back to the plaintiff to show that the proffered nondiscriminatory reason was a pretext. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214-215; *Serri*, *supra*, 226 Cal.App.4th at pp. 860-861.)

But when a defendant moves for summary judgment/adjudication, these trial procedure rules do not apply. "A defendant seeking summary judgment must bear the initial burden of showing that 'the action has no merit' [citation], and the plaintiff will not be required to respond unless and until the defendant has borne that burden. [Citations.] In this sense, upon a defendant's summary judgment motion in an employment discrimination action 'the burden is reversed . . . .' [Citation.]" (*Martin v. Lockheed Missiles & Space Co.*, (1994) 29 Cal.App.4th at pp. 1730-1731; *Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 613; *Serri*, *supra*, 226 Cal.App.4th at p. 861.)

BB here presented evidence that Gonzalez was terminated for legitimate reasons that were "unrelated to unlawful discrimination." (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.) The key issue thus is "whether the employer acted with *a motive to discriminate illegally.* Thus, 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias,* and which, if true, would thus preclude a finding of *discrimination.*" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 358; *Serri*, *supra*, 226 Cal.App.4th at p. 861.)

11

"[T]he great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 361, fn. omitted; *Serri*, *supra*, 226 Cal.App.4th at p. 861.) "It is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive. [Citations.] Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer. [Citations.]" (*Serri*, *supra*, at p. 862.)

V.

AGE DISCRIMINATION IN VIOLATION OF FEHA

BB contends Gonzalez cannot establish a prima facie case of age discrimination because he has failed to provide any evidence that he was replaced by a significantly younger employee. We disagree.

Under FEHA, it is unlawful for an employer to discriminate against an employee on the basis of age. (§ 12940, subd. (a).) Section 12941, subdivision (a), makes it unlawful to take adverse employment actions against a person over the age of 40 on the grounds of age. To establish a prima facie case of age discrimination, the employee must show "(1) at the time of the adverse action he or she was 40 years of age or older,[] (2) an adverse employment action was taken against the employee, (3) at the time of the adverse

action the employee was satisfactorily performing his or her job and (4) the employee was replaced in his position by a significantly younger person." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1003, fn. omitted.)

Here, Gonzalez cited sufficient evidence of the four elements required to establish a prima facie case of age discrimination. First, it was undisputed Gonzalez was over 40 years old. At the time he was terminated, he was almost 63 years old.

Second, it is undisputed an adverse employment action was taken against Gonzalez. He began working at BB in March 1983 as a forklift operator, and was promoted in 1990, to a receiver, which was a salaried supervisor position. In December 2018, he received a salary merit increase. Although Gonzalez had been an exemplary employee for over 36 years, at the end of 2019, Gonzalez was told that Omar Garcia would be taking over as supervisor of the receiving department and Gonzalez would be reporting to him. Omar Garcia began assuming some of Gonzalez's supervisorial job duties. Then, without providing any explanation or reasons, Gonzalez's supervisors told him that, because he would no longer be a supervisor, he was being reclassified as an hourly, non-exempt employee, which in effect, was a demotion. This occurred after there was new leadership at BB in 2019. Gonzalez's supervisors also cited him for performance violations in November 2019, and in February and March 2020. Gonzalez noticed that other younger employees who committed the same type of conduct were not disciplined. When terminated, Gonzalez was 63 years old.

13

Third, Gonzalez provided evidence, including his declaration[4] and deposition testimony, that, at the time of the adverse action, he was satisfactorily performing his job. Gonzalez testified that, at the time of his termination, he was capable of performing his job duties, with some limitations, such as limitations on lifting heavy objects. He was capable of operating a forklift. Before BB's leadership changed in 2019, Gonzalez regularly received merit-based wage increases up until December 2018.

As to the fourth factor required to establish a prima facie case of age discrimination, the record contains evidence supporting a reasonable finding that, when Gonzalez was demoted from his position as a salaried supervisor to an hourly employee and thereafter terminated, most of his job responsibilities were transferred to a younger employee, Omar Garcia, who was 36 years old. Also, Gonzalez alleges in his FAC that when he was terminated, he was replaced by a much younger employee, who was around 22 years old. Although there is no evidence as to the age of the employee who replaced Gonzalez when he was terminated, a reasonable inference can be made, based on the totality of the evidence, that he was replaced by a younger employee. There is evidence, including Gonzalez and Alcaraz's statements of their observations that there were no other employees in the receiving department older than 60 when Gonzalez and Alcaraz were terminated. This reflects BB's proclivity to hire young employees.

---

[4] The trial court sustained BB's objections to Gonzalez's declaration only as to paragraphs 11, 20, and 21. This court may thus consider admissible statements made within the remainder of Gonzalez's declaration, to which the trial court overruled BB's objections

14

In addition, Alcaraz's declaration supports a reasonable inference that he and Gonzalez were terminated in whole or in large part based on their age, and replaced by younger employees. According to Alcaraz, contrary to company policy, his work notice of termination was the first written work notice he had ever received.[5] Alcaraz had worked for BB for 24 years, and throughout that time, had worked with Gonzalez in the receiving department as a forklift driver. Alcaraz stated in his declaration that he and Gonzalez were the only workers in the receiving department over 60 years old. All other workers in the department were in their 20s and 30s. Alcaraz further stated that there were "no other older workers in receiving and shipping departments other than Mr. Primitivo Zamora, who worked in shipping," and he left the company shortly after new management took over in 2019. Gonzalez's declaration, deposition testimony, and other evidence similarly support reasonable inferences he was terminated based on his age and replaced by a younger employee.

Furthermore, "although 'proof regarding "similarly situated" employees outside the protected class . . . may be one way of raising an inference of intentional discrimination, *it is not the only way.* . . . [¶] To state that a plaintiff may never establish a prima facie case if the plaintiff fails to produce evidence that similarly-situated employees outside the protected class were promoted, restricts unfairly the circumstances

---

[5] We recognize the trial court sustained BB's evidentiary objections to some of Alcaraz's statements in his declaration. This does not preclude this court from considering admissible statements in Alcaraz's declaration which provide relevant facts based on Alcaraz's personal knowledge and observations.

from which discrimination may be inferred.'" (*Begnal v. Canfield & Associates, Inc.* (2000) 78 Cal.App.4th 66, 75, quoting *Heard v. Lockheed Missiles & Space Co.,* (1996) 44 Cal.App.4th 1735, 1775.)

"'Although the characteristics of the employee replacing a discharged or demoted employee are certainly relevant in evaluating an employer's motive for an employment decision, we believe those characteristics *go to the weight of the evidence* rather than its *legal sufficiency.*'" (*Begnal*, *supra*, 78 Cal.App.4th at p. 75, italics added; see also *Hersant v. Department of Social Services*, *supra*, 57 Cal.App.4th at pp. 1002-1003, fn. 3 [court observed, in dicta, that evidence of replacement by a younger person may not be necessary if the employee offers other evidence "such that a reasonable inference of age discrimination arises"].)  In this case, evidence supports an inference that BB terminated Gonzalez based upon his age.  We therefore conclude there are triable issues of fact as to whether Gonzalez was replaced by a younger employee and whether there was age discrimination.

BB argues Gonzalez cannot establish a prima facie case of age discrimination because it is undisputed Gonzalez was terminated for a legitimate, nondiscriminatory reason.  "[T]o avoid summary judgment, an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude

the employer engaged in intentional discrimination." (*Hersant v. Department of Social Services*, *supra*, 57 Cal.App.4th at pp. 1004-1005.)

"'[T]he [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [the asserted] non-discriminatory reasons." [Citations.]'" (*Hersant v. Department of Social Services*, *supra*, 57 Cal.App.4th at p. 1005, quoting *Fuentes v. Perskie* (3d Cir. 1994) 32 F.3d 759, 765, fn. omitted.)

The court in *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 286, noted that "many employment cases present issues of intent, and motive, and hostile working environment, issues not determinable on paper. Such cases, we caution, are rarely appropriate for disposition on summary judgment, however liberalized it be." The *Nazir* court added in a footnote that "[t]he leading practical treatise for California federal procedure goes so far as to state that 'Disputes as to the employer's motives or state of mind raise factual issues, precluding summary judgment. [Citations.]' (Schwarzer et al., Cal. Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2009) ¶ 14:280, p. 14-81.)" (*Nazir v. United Airlines, Inc*, *supra*, 178 Cal.App.4th at p. 286, fn. 23.)

Here, Gonzalez has provided sufficient evidence raising a triable issue of material fact as to whether BB's proffered reason for terminating him was pretext for terminating

him based on his age. There is evidence that BB deviated from its written termination policies and actual termination practices when terminating both Gonzalez and Alcazar, who observed they were the only employees remaining in the receiving department over the age of 60. BB's employee handbook states that disciplinary action normally shall be progressive. Exceptions may occur where BB believes that the circumstances are such that it is necessary not to follow normal progressive disciplinary procedures, such as where there has been a serious act of misconduct.

A reasonable fact finder could find that Gonzalez's conduct of walking alongside Alcaraz, who was driving a forklift with a stack of bins obscuring his view, was not a violation warranting immediate termination. Layes testified that "there was no height limit" on the bins stacked on a forklift. According to Layes, the policy "was basically just do not exceed the load of the forklift" and "operate the forklift safely." When asked if BB had a policy regarding the maximum number of bins that forklift drivers could carry at one time, Layes responded, "No, I don't think – I don't remember a policy."

Consistent with this response, Gonzalez stated in his declaration that Layes had previously told him that, when forklift drivers transported multiple bins, they should drive in reverse. But when Gonzalez told Layes that he did not always feel comfortable driving the forklift in reverse and felt safer driving forward, Layes instructed Gonzalez to drive the forklift in the way he felt safest. A triable issue thus exists as to whether Alcaraz's act of driving a forklift forward, with Gonzalez walking alongside him, qualified as serious misconduct subject to immediate termination of Gonzalez under the

18

BB employee handbook policies and procedures.  Examples of serious misconduct listed in the employee handbook include employee acts of violence, insubordination toward a supervisor, and theft or destruction of property.

The termination process stated in BB's employee handbook consists of the following four-step termination process: step 1, a verbal warning of unacceptable conduct; step 2, a written work notice; step 3, a second written work notice for continued failure to comply; and step 4, a third written work notice within a twelve month period, resulting in termination.

Unlike Alcazar, who said he had no prior work notices for performance violations, Gonzalez had a recent history of work notices, beginning when there was a change in BB management in 2019.  When Gonzalez was terminated on March 11, 2020, he had received three prior work notices.  His first was a verbal warning on November 8, 2019, for a worker under his supervision transporting stacked bins on a forklift.  Gonzalez testified he did not see the incident.  On February 10, 2020, Gonzalez received a write-up for showing up early for work, at 2:00 p.m., when he was scheduled to start working at 2:30 p.m.  Gonzalez stated he had a lot of work to do, so he came in early, as he often did.  On March 4, 2020, Gonzalez received a write up for not following his work assignment, by failing to report to work at 4:00 p.m., on February 27, 2020, after being told not to come in to work that day.  The work notice states it was a "Last warning.  Next time termination."  Gonzalez refused to sign the written work notice because his supervisor told him not to show up that day.

19

The final incident was on March 11, 2020, for allowing Alcaraz, whom Gonzalez was supervising, to drive a forklift forward carrying stacked bins, while Gonzalez walked alongside. Alcaraz and Gonzalez were both immediately terminated. Gonzalez refused to sign the discharge work notice, which stated he was being terminated for failure to operate a forklift in a safe manner, driving forward with full view obstructed by "3 or 6 bins," after receiving training instructing him not to do so, and after a verbal warning on November 8, 2019.

Although Gonzalez may have committed a safety violation for supervising a forklift driver who drove a forklift forward with a stack of bins, a reasonable inference can be made that such conduct did not justify termination, particularly since Gonzalez had a long history of good job performance and did not have any work notices until after new management took over in 2019 and began citing him for work performance violations, that were of questionable validity. When BB supervisor Layes was asked during his deposition if any BB employees in the shipping and receiving departments had ever been automatically terminated for a safety violation, Layes stated he did not recall any. He recalled some suspensions for major safety violations in the shipping department for close calls with forklift drivers and pedestrians. Layes only recalled suspensions for major safety violations, but did not recall how many and he could not think of a particular instance over the course of his 20 years with BB.

Also, Gonzalez was demoted without being given any valid justification, and he received two work notices within a month and a half of his termination, and the notices

could be reasonably construed as unfounded or of a minor nature. In turn, because a reasonable factfinder could find that the February 10 and or March 4, 2020, work notices were unfounded, BB did not comply with its progressive disciplinary policy when it terminated Gonzalez.

Additional evidence of age discrimination includes Alcaraz's declaration statement that he also was terminated even though he had never received any prior written work notices during his 24 years of employment with BB. Also, Gonzalez testified that although no one said anything to him about his age, his manager criticized him for working too slow, whereas the younger employees, most of whom appeared to be in their 20s and 30s, were not criticized, even though they were working at the same pace as Gonzalez. Even though there is no evidence of the age of the employee who replaced Gonzalez when he was terminated, under the totality of the evidence, a reasonable inference can be made that Gonzalez was singled out and terminated because of his age.

We thus conclude the evidence raises a triable issue of fact as to whether Gonzalez's age was a substantial factor relied upon by BB when BB demoted and terminated him. (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at p. 232.) The record provides evidence disputing that BB's reasons for Gonzalez's termination were legitimate, and supports a reasonable finding that they were pretext for discriminating against him based on his age. Therefore, denial of summary adjudication of the first cause of action for age discrimination was proper.

21

# VI.

## DISABILITY DISCRIMINATION IN VIOLATION OF FEHA

BB contends the trial court erred in denying its motion for summary adjudication of the third cause of action for disability discrimination under section 12940, subdivision (a) because there was no evidence BB knew Gonzalez had a disability. We disagree.

Under FEHA section 12940, subdivision (a), it is unlawful for an employer to discriminate against an employee because of a physical or mental disability or medical condition. A prima facie case for disability discrimination requires the plaintiff to show that the employee: (1) suffers from a disability; (2) is otherwise qualified to do his job; and (3) was subjected to adverse employment action because of the employee's disability. (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886.)

The plaintiff employee bears the burden of establishing a prima facie case of discrimination based on a disability, and "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." (*Faust v. California Portland Cement Co.*, *supra*, 150 Cal.App.4th at p. 886, quoting *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44.) Once the employer has established a nondiscriminatory reason, the plaintiff must offer evidence that the employer's stated reason is false or pretextual, or the employer acted with discriminatory animus, or evidence of each of these, which would permit a reasonable trier of fact to conclude the employer intentionally discriminated. (*Faust v. California Portland Cement Co*, *supra*, at p. 886; *Deschene v. Pinole Point Steel Co.*, *supra*, at p. 44.)

Section 12926.1, subdivision (a) adds that state law disability protection is broader and provides protections independent from those in the federal Americans with Disabilities Act of 1990. Section 12926.1 clarifies that "[p]hysical and mental disabilities include, but are not limited to, chronic or episodic conditions . . . . In addition, the Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the federal Americans with Disabilities Act of 1990, a 'substantial limitation.' This distinction is intended to result in broader coverage under the law of this state than under that federal act . . . . Further, under the law of this state, 'working' is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments." (§ 12926.1, subd. (b); see also *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031.)

Gonzalez alleged in his third cause of action for disability discrimination that BB's decision to terminate him and take other adverse actions against him was motivated by Gonzalez's actual, perceived, and history of disability (§ 12940, subd. (a)). BB moved for summary adjudication of the third cause of action for disability discrimination on the ground that Gonzalez could not establish a prima facie case of disability discrimination, because he could not show that he was subjected to adverse employment action due to his disability.

23

BB does not argue Gonzalez did not have any physical disability. BB also does not contend he could not perform his job or that he was terminated because of his physical limitations. Rather, BB argues it was unaware that Gonzalez suffered any disability, and therefore Gonzalez cannot show that BB discriminated against him based on a physical disability when terminating him. BB further argues it had a legitimate, nondiscriminatory business reason for terminating Gonzalez, and he did not present evidence that BB's reasons were false or pretextual. We conclude Gonzalez provided sufficient evidence to raise a triable issue of fact as to whether BB knew of Gonzalez's disability before terminating him and whether the reasons for terminating Gonzalez were pretextual.

There is undisputed evidence that Gonzalez suffered from work-related back injuries and other physical conditions. These injuries may have been caused by a couple of accidents in 2019, as well as from Gonzalez performing his job responsibilities over the course of his employment at BB. Gonzalez testified that in 2019, he hurt his back when he slipped and fell backwards at work. He did not report the incident to supervisor Layes, but told another supervisor, Primitivo Zamora, and Alcaraz about the incident. Gonzalez had another accident in 2019, in which he hurt his back when driving a forklift in reverse and hit a pole. He told his supervisor, Rudy Garcia.

Gonzalez further testified that on February 6, 2020, he told Estrada about the two 2019 incidents, and that he was having a lot of back pain. He told her he could not work the same as he had before. He also told Estrada that he believed his back pain was

24

caused by repetitive work-related movement and injuries, and requested Estrada to send him to a company doctor. She said no, because a long time had passed since his forklift accident in 2019.

Estrada testified that Gonzalez came to her office on February 6, 2020, and she learned of Gonzalez's back injury and that he wanted to go to the doctor. He told her his back was bothering him. When she asked him if he had just got hurt, he said, "No." Estrada testified he said, "'I had little injuries here and there in the past years, and I think it's due to that.'" Gonzalez said his injuries happened at work in the past. She did not ask him more follow-up questions about his injuries because he had said he had not been involved in any injuries within the past few years. Estrada explained that Gonzalez said his injuries over the years were from "repetitive stuff, twisting and turning." She believed Gonzalez came to see her because he wanted to see a doctor. She did not send him to a doctor because she concluded, based on his statements, he did not have a work-related injury. Also, he did not submit a work-related injury report, complain to anyone that he was injured in the past, or complain to his supervisors or upper management. Estrada acknowledged that in 2020, she understood that repetitive workplace activities causing aches and pains could qualify as a workplace injury.

Estrada further testified that on February 6, 2020, after meeting with Gonzalez, she prepared a statement summarizing the meeting. She put her statement in a workers' compensation file in the event something came up in the future. That same day Estrada reported Gonzalez's injury to Mazzetti, who said, "'Do what you have to do.'" Estrada

25

also talked to Layes about Gonzalez's injuries because Layes was the packinghouse manager and worked directly with Gonzalez. She told Layes that in case BB needed to accommodate Gonzalez or alter Gonzalez's job duties. Layes responded, "'Thanks for the update.'" It was Estrada's usual practice at that time to have a conversation with the employee's supervisors about an employee's report to her of having pain or an injury. According to Estrada, at the time of her meeting with Gonzalez in February 2020, Primitivo Zamora and Layes were Gonzalez's supervisors.

Estrada testified that her job duties included assisting employees who requested accommodations for their job. That was why she "had that conversation with Mr. Layes after – after Mr. Gonzalez conveyed his aches and pains to [her]." Estrada denied that Gonzalez requested accommodations but she also did not ask him if he needed any because "[t]here was nothing to accommodate." There were no doctors' notes or reports.

Estrada's written statement briefly summarizing her meeting with Gonzalez on February 6, 2020, stated that "Gonzalez was in my office complaining about his back and wanting to go to the Doctor . . . . [M]y question to him was: did you get hurt? [H]is answer was NO but years back I've had little incidents and it could be related to that. [¶] I checked the files [to] see if we had any previous work-related injuries on him and no reported injuries were found. [¶] My suggestion to him was to go see his primary doctor and get it checked out." An OSHA form 300, entitled "Log of Work-Related Injuries and Illnesses," states that Gonzalez injured his back on February 4, 2020, and the injury was caused by a forklift. The form does not indicate when or who filled out the form.

26

Gonzalez testified he believed Layes knew that he had reported to Estrada his back injury because Layes arrived shortly after his meeting with Estrada began. Gonzalez did not remember what part of the conversation Layes heard, but Layes mentioned the conversation to him afterwards. Layes said he heard Gonzalez say to Estrada that he had pain and was going to work slower.

We conclude there is sufficient evidence to raise a triable issue as to whether BB was aware of Gonzalez's injuries and related limitations before terminating him, and whether BB terminated him because of them. "As stated in *Schmidt v. Safeway Inc.* (D.Or.1994) 864 F.Supp. 991, 997, an employer 'knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation. The employer need only know the underlying facts, not the legal significance of those facts.'" (*Faust v. California Portland Cement Co.*, *supra*, 150 Cal.App.4th at p. 887.)

There is also sufficient evidence to raise a triable issue as to whether BB's stated reason for terminating Gonzalez was pretext. Shortly after Gonzalez told Estrada on February 6, 2020, that he was suffering debilitating back pain from work-related injuries, he received two work notices and then was fired for a third incident on March 11, 2020. "Although 'temporal proximity alone is not sufficient to raise a triable issue as to pretext,' 'temporal proximity, *together* with the *other* evidence, may be sufficient to establish pretext.'" (*Diego v. Pilgrim United Church of Christ* (2014) 231 Cal.App.4th 913, 932,

27

quoting *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 353, 354.) As the court in

*Arteaga* explained: "In the classic situation where temporal proximity is a factor, an

employee has worked for the same employer for several years, has a good or excellent

performance record, and then, after engaging in some type of protected activity . . . is

suddenly accused of serious performance problems, subjected to derogatory comments

about the protected activity, and terminated." (*Arteaga v. Brink's*, *supra*, 163 Cal.App.4th

at pp. 353-354.) Here, there was temporal proximity between Gonzalez reporting his

disability and his termination. He also had a lengthy, good job performance history,

without any job performance work notices until a change in management in 2019.

In addition, there is evidence that, before Gonzalez was terminated, BB was

notified by a letter dated February 13, 2020, that Gonzalez was submitting a workers'

compensation claim for his work-related injuries suffered between February 4, 2019, and

February 4, 2020. Attached to the letter is a proof of service stating that BB was served

with the letter by mail on February 13, 2020.

BB argues that Gonzalez could not raise a triable issue as to his disability by

relying on paragraph 15 of his declaration, because paragraph 15 contradicts his prior

deposition testimony admissions. Paragraph 15 states: "While in her office, I informed

Estrada that I was experiencing severe back pain and did not believe I could continue

working my normal job duties without accommodations—specifically, being permitted to

work more slowly and take breaks when needed. "I then asked Estrada if I could go see a

doctor. Ignoring my request for help, Estrada asked me if ***he*** [I] had 'just injured' myself,

28

and I told Estrada about the numerous incidents in which I had injured ***himself*** [myself] at work, including the incidents in 2019 when I slipped and fell at work and ran into a pole.  Instead of engaging with me regarding my debilitating injury, Estrada dismissed me, told me to see my own doctor, and sent me back to work.  However, before sending me back to work, Estrada called [Omar] Garcia while I was in her office and told ***me*** [him] that ***Gonzalez*** [I] needed to 'take it easy' because I had an injured back.  I could have continued performing my job duties with accommodations."  (Italics and bold added.)

First, we recognize that, as BB notes, this paragraph includes the use of incorrect pronouns, which are indicated in italics and bold.  BB argues the statements are therefore incomprehensible and refers to paragraph 15 as containing "gibberish."  But these grammatically incorrect statements are comprehensible when replacing the incorrect pronouns (in bold italics) with the obvious proper pronouns, which we include in brackets.  It is likely that these grammatical errors were inadvertently made by Gonzalez, who speaks Spanish, or his translator.

BB further argues paragraph 15 must be disregarded because it contains statements which are inconsistent with Gonzalez's deposition testimony regarding whether Gonzalez requested disability accommodations.  Gonzalez's deposition testimony and declaration statements in paragraph 15 are not inconsistent.  He testified that he did not tell Omar Garcia that he had a disability or that he needed to change the way he performed his job so he could do his job comfortably.  Gonzalez also testified that he never asked anyone at

29

BB to change anything about the way he performed his work in order to make it more comfortable for him. Although in his declaration, Gonzalez states he told Estrada that he needed to work slower and take breaks, this is not inconsistent with his deposition testimony that he never asked anyone at BB to change the way he was required to perform his job.

Even assuming Gonzalez's statements in paragraph 15 of his declaration are construed as inconsistent with his deposition testimony, disregarding paragraph 15 would not make any difference in the outcome of BB's MSJ/MSA. There is ample evidence in the record sufficient to raise a triable issue as to whether BB was aware of Gonzalez's disability and whether BB's stated reason for terminating him was pretextual. We therefore conclude the trial court did not err in denying summary adjudication of BB's third cause of action for disability discrimination.

VII.

OTHER WRONGFUL TERMINATION CAUSES OF ACTIONS

BB contends the trial court erred in denying summary adjudication of the fifth through eleventh causes of action alleged in the FAC. We conclude Gonzalez provided sufficient evidence to raise triable issues of material fact as to those causes of action.

A. *Fifth Cause of Action for Failure to Provide Reasonable Accommodation*

The fifth cause of action alleges failure to provide reasonable accommodations to Gonzalez for his disability, in violation of FEHA (§ 12940, subds. (a), (i), (m), & (n)). Under FEHA, it is unlawful for any employer to fail to provide reasonable

30

accommodations for an employee's known physical or mental disabilities. (§ 12940, subd. (m)(1); *Hernandez v. Rancho Santiago Community College District* (2018) 22 Cal.App.5th 1187, 1192-1193.) "There are three elements to a failure to accommodate action: '(1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability. [Citation.]'" (*Hernandez v. Rancho Santiago Community College Dist.*, *supra*, at pp. 1193-1194.)

Gonzalez provided evidence that he had a disability protected by FEHA and was a qualified individual under FEHA. He also provided substantial evidence that BB failed to reasonably accommodate his disability after he told Estrada on February 6, 2020, that he suffered back pain, which he believed was work-related.

BB argues it was unaware of Gonzalez's alleged disability or that it affected his ability to work. Gonzalez provided evidence refuting this. Gonzalez testified and stated in his declaration that he informed Estrada he suffered from work-related back pain, and that it was affecting his ability to work. Estrada also testified to these facts and that Gonzalez requested to see a company doctor for his work-related injuries. Estrada further testified she informed Layes and Mazzetti of her conversation with Gonzalez about his work-related injuries. Estrada stated that the same day as her conversation with Gonzalez, she drafted a statement summarizing the conversation and placed the memorandum in a workers' compensation file.

31

In paragraph 15 of Gonzalez's declaration, he states he told Estrada on February 6, 2020, that he needed to be able to perform his job responsibilities slower and take more breaks. Even if we disregard paragraph 15, there is other evidence showing that BB knew about Gonzalez's work-related injuries and physical disability, yet failed to provide any reasonable accommodation for them. Gonzalez thus raised a triable issue as to his fifth cause of action alleging failure to accommodate known disabilities.

BB argues summary adjudication should be granted because Gonzalez did not request any accommodation. However, "[a]lthough it is the employee's burden to initiate the process, no magic words are necessary, and *the obligation arises once the employer becomes aware of the need to consider an accommodation.*" (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 62, fn. 22 (*Gelfo*); *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013 (*Scotch*).) Here, there is evidence that Gonzalez initiated the process by reporting his work-related injuries to Estrada and requesting to see a company doctor. BB did nothing to address Gonzalez's injuries, which Gonzalez reported were work-related. BB did not take any action to evaluate or treat his injuries, or determine whether reasonable accommodations were necessary.

B. *Sixth Cause of Action for Failure to Engage in Interactive Process*

BB contends Gonzalez's sixth cause of action, alleging failure to engage in the interactive process, also fails because there is no evidence BB violated any duty to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of section 12940, subdivision (n). BB argues there is no

evidence that BB knew Gonzalez had a disability and the disability was not open, obvious, and apparent to BB. (*Doe v. Department of Corrections & Rehabilitation*, *supra*, 43 Cal.App.5th at p. 738.)

Section 12940, subdivision (n) provides that it is a violation of FEHA "[f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition."

"The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively. [Citation.] Ritualized discussions are not necessarily required." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1195; *Scotch*, *supra*, 173 Cal.App.4th at p. 1013.) "The employee must initiate the process unless the disability and resulting limitations are obvious. 'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" (*Scotch*, *supra*, at p. 1013; see also *Taylor v. Principal Financial Group, Inc.* (5th Cir.1996) 93 F.3d 155, 165.) "Although it is the employee's burden to initiate the process, no magic words are necessary, and *the obligation arises once the employer becomes aware of the need to consider an*

*accommodation*." (*Gelfo*, *supra*, 140 Cal.App.4th at p. 62, fn. 22; *Scotch*, *supra*, at p. 1013.)

Liability for failure to accommodate "'hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.'" (*Scotch*, *supra*, 173 Cal.App.4th at p. 1014*; Gelfo*, *supra*, 140 Cal.App.4th at p. 62, fn. 22.)

Here, there was sufficient evidence showing that Gonzalez had a work-related injury that qualified under section 12940 as a disability, and that BB knew Gonzalez had complained of suffering from work-related injuries. As to Gonzalez requesting a reasonable accommodation, Gonzalez states in paragraph 15 of his declaration that he requested seeing a company doctor, and that he be permitted to work more slowly and take breaks when needed, but Estrada ignored his requests. Gonzalez also testified that supervisor Omar Garcia knew about his injuries and that it would have been apparent to Omar Garcia that Gonzalez's injuries slowed him down with his work.

In addition, Estrada stated in her deposition testimony and memorandum summarizing her conversation with Gonzalez on February 6, 2020, that Gonzalez came into her office complaining about his back and wanting to see a doctor. Estrada testified Gonzalez told her his back injury was from work-related injuries and activities. Estrada reported her conversation with Gonzalez to Mazzetti and Layes "in case [BB] needed to follow anything differently when it came to his job." Estrada added, "To see if his job duties needed to be altered or anything . . . ." Even without paragraph 15, the evidence

34

was sufficient to raise a triable issue as to whether BB violated FEHA by failing to engage in a timely, good faith, interactive process with Gonzalez to determine effective reasonable accommodations for him.  (§ 12940, subd. (n).)

C. *Seventh Cause of Action for Retaliation*

BB contends the trial court erred in denying summary adjudication of the seventh cause of action, alleging retaliation for protected activity under FEHA.  We disagree.

Gonzalez alleges in the seventh cause of action for retaliation that BB retaliated against him "for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h)."

The elements of a retaliation cause of action in violation of section 12940, subdivision (h), are:  "(1) the employee's engagement in a protected activity . . . ; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation."  (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 713.)

Proof of the second and fourth elements "is likely to depend on circumstantial evidence, since they consist of subjective matters only the employer can directly know . . . .  Given the resulting difficulties of proof, the courts have fashioned a special presumption shifting the burden of production—but not persuasion—to the employer upon a prescribed showing by the plaintiff.  Specifically, the employee 'may raise a

35

presumption of discrimination by presenting a "prima facie case," the components of which vary with the nature of the claim, but typically require evidence that "(1) [the plaintiff] was a member of a protected class [or engaged in a protected activity], (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory [or retaliatory] motive. [Citations.]" [Citation.] A showing to this effect gives rise to a presumption of discrimination which, if unanswered by the employer, is mandatory—it requires judgment for the plaintiff." (*Mamou v. Trendwest Resorts, Inc.*, *supra*, 165 Cal.App.4th at pp. 713-714.)

Gonzalez provided evidence, as discussed above regarding his other causes of action, that he (1) is a member of a protected class or engaged in protected activity, (2) was qualified for his job position, and (3) suffered adverse employment action. Gonzalez was over the age of 50 and had physical disabilities, he was qualified for his job position, and he suffered adverse employment actions, including demotion, disciplinary work notices, and termination.

Gonzalez also provided evidence of retaliation and a causal link to adverse employment action. There is evidence Gonzalez told Estrada in February 2020, that he suffered from work-related injuries, and within the following 5 weeks, he received two disciplinary work notices, and a third one on March 11, 2020, resulting in his immediate termination. There was also evidence that the February 10, 2020, and March 4, 2020,

work notices were unfounded or were for a minor act.  There is also a triable issue as to whether Gonzalez's termination was in violation of BB's disciplinary policies and procedures stated in BB's employee handbook.  We thus conclude there was sufficient evidence raising a triable issue as to the seventh cause of action for retaliation.

D. *Eighth Cause of Action for Failure to Prevent Discrimination and Retaliation*

The trial court also did not err in denying summary adjudication of the eighth cause of action for failure to prevent discrimination, harassment, and retaliation, in violation of section 12940, subdivision (k).  BB alleges in the eighth cause of action that BB failed to prevent its employees from discriminating against Gonzalez based on his age, disability, and participation in protected activities.

Section 12940, subdivision (k) provides that, with a few exceptions which are inapplicable, it is "an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).)  "The employer's duty to prevent harassment and discrimination is affirmative and mandatory.  (Gov. Code, § 12940, subds. (j)(1), & (k).)  Prompt investigation of a discrimination claim is a necessary step by which an employer meets its obligation to ensure a discrimination-free work environment."  (*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021, 1035.)  Evidence of discrimination is required for finding an employer has violated section 12940, subdivision (k).  (*Trujillo v. North Cnty. Transit Dist.* (1998) 63 Cal.App.4th 280, 289.)

As concluded above regarding the discrimination and retaliation causes of action, there is sufficient evidence to raise a triable issue regarding discrimination and retaliation. There is also evidence BB knew Gonzalez was over the age of 60, had reported work-related injuries, was not sent to a company doctor, and was not accommodated in any way for his reported injuries. Also, BB was aware that, although Gonzalez had a lengthy history of good job performance lacking in discipline prior to 2019 and only a few recent work notices, a couple of which Gonzalez refuted, he was immediately terminated for an act that was not listed in the employee handbook as being subject to immediate termination, or the type of conduct warranting deviating from BB's standard written discipline and termination policies and procedures. Evidence of these facts and circumstances was sufficient to raise a triable issue of fact as to Gonzalez's eighth cause of action for failure to prevent discrimination, harassment, and retaliation.

E. *Ninth Cause of Action for Violation of Labor Code Section 6310*

BB argues the trial court erred in denying summary adjudication of Gonzalez's ninth cause of action for violation of Labor Code section 6310 by wrongfully terminating Gonzalez after discriminating and retaliating against him based on Gonzalez reporting his work-related injuries, and filing a worker's compensation claim against BB. A violation of Labor Code section 6310 requires proof that (1) the employee engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link between the two. (*St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 314.)

38

Gonzalez provided sufficient evidence of these three elements. He provided evidence that he suffered work-related injuries and reported them to BB. Within five weeks of Gonzalez reporting his back pain his work-related injuries in February 2020, BB terminated Gonzalez. Evidence of these facts is sufficient to raise a triable issue as to whether BB's stated reason for Gonzalez's termination was pretextual. There thus is a triable issue as to whether BB violated Labor Code section 6310 by discriminating and retaliating against him based on Gonzalez reporting his work-related injuries.

F. *Tenth Cause of Action for Wrongful Termination*

BB contends the trial court erred in denying summary adjudication of the tenth cause of action for wrongful termination in violation of public policy. Gonzalez's tenth cause of action is derivative of his other causes of action alleging FEHA violations, such as termination based on age and disability discrimination. Gonzalez alleges in the tenth cause of action that BB terminated his employment in part because of his protected status (age, disability, and making good faith complaints), in violation of FEHA, the California Constitution, and Labor Code section 1102.5.

Age, disability, and other forms of discrimination in employment are prohibited by both state and federal law. (§ 12940, subd. (a); 42 U.S.C. § 2000e et seq.) The right to hold employment free of discrimination on the basis of various protected classifications is a civil right. (§ 12921, subd. (a).) The prohibition against such workplace discrimination is a fundamental public policy. The express purpose of FEHA is to provide effective remedies that will eliminate such discriminatory practices. (§ 12920; *Northrop Grumman*

39

*Corp. v. Workers' Comp. Appeals Bd.*, *supra*, 103 Cal.App.4th at p. 1035.) As such, "employers must 'take all reasonable steps necessary to prevent discrimination and harassment from occurring.' [Citations.]" (*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, *supra*, at p. 1035; *Trujillo v. North County Transit Dist.*, *supra*, 63 Cal.App.4th at p. 286.)

As discussed in preceding sections of this opinion, there is evidence raising triable issues of fact as to whether that BB terminated Gonzalez based on age and disability discrimination, and committed other violations of FEHA. Such evidence is sufficient to raise a triable issue of fact as to whether BB committed wrongful termination of Gonzalez in violation of public policy. The trial court thus did not err in denying summary adjudication of the tenth cause of action.

G. *Eleventh Cause of Action for Violating Labor Code section 1102.5*

We likewise conclude the trial court properly denied summary adjudication of the eleventh cause of action for violating Labor Code section 1102.5 (commonly known as the whistleblower statute). That statute prohibits employer retaliation against any employee for disclosing or complaining of an employer's illegal acts. Gonzalez alleges BB retaliated against him for reporting that BB unlawfully discriminated against him based on his age, disability, and making good faith complaints.

As discussed regarding Gonzalez's other causes of action, there is evidence showing BB terminated Gonzalez based on age and disability discrimination, and because he complained of work-related injuries and notified BB he was filing a workers'

compensation claim against BB.  Such evidence is sufficient to raise a triable issue of fact as to whether BB retaliated against Gonzales in violation of Labor Code section 1102.5. The trial court thus did not err in denying summary adjudication of the eleventh cause of action.

## VIII.

## DISPOSITION

BB's request for a writ of mandate, directing the trial court to vacate its order denying summary judgment and summary adjudication of the first, third, and fifth through eleventh causes of action, is denied.  Gonzalez is awarded his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.